[No. A047094. First Dist., Div. Two. Jan. 24, 1991.]

SANTA CLARA LAND TITLE COMPANY, Plaintiff, Cross-defendant and Respondent, v.
NOWACK & ASSOCIATES, INC., Defendant, Cross-complainant and Appellant.

1560

**COUNSEL**

William F. Pagano and Michael C. Johnston for Defendant, Cross-complainant and Appellant.

Leland, Parachini, Steinberg, Flinn, Matzger & Melnick and Paul J. Matzger for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**KLINE, P. J.—**

### Introduction

Nowack & Associates, Inc. (Nowack) appeals from a judgment of the Alameda County Superior Court in favor of Santa Clara Land Title Company (Santa Clara) following entry of summary judgment on Santa Clara's complaint to quiet title to certain property owned by it in Alameda County and against Nowack's cross-complaint seeking enforcement of a judgment of foreclosure of its mechanic's lien. We affirm the trial court, as we determine the release executed by Nowack effectively released its mechanic's lien and that the deed of trust recorded by construction lender World Savings and Loan Association (World Savings) had priority.

### Statement of Facts & Procedural Background

On September 27, 1979, Nowack, a civil engineering firm, contracted with Robert McBain to provide engineering services for a multi-unit residential development on eight acres in Alameda County. In addition to engineering design work, in September and October 1979, Nowack performed a boundary survey of the property, setting field survey fly points and setting three-quarter-inch iron boundary markers below the surface at corner locations of the property. This work was the only on-site "work of improvement" claimed to have been performed by Nowack during its lengthy service as engineer for the project. Extensive off-site engineering services were rendered by Nowack. Having received no payment, Nowack

recorded a mechanic's claim of lien for $30,021 against the property on September 5, 1980. Nowack filed an action for a money judgment and to foreclose the mechanic's lien claim on December 3, 1980. On June 19, 1981, the property was sold to Michael and Marguerite Blumenthal. Nowack received payment in full of its fees out of the property sale escrow.

On August 31, 1981 the new owner, Michael Blumenthal, on behalf of Interbank Corporation, retained Nowack to continue providing engineering services for development of the project. On September 22, 1983, Blumenthal, again on behalf of Interbank, executed another contract with Nowack for additional engineering services. Blumenthal failed to pay Nowack and on December 5, 1983, Nowack recorded its second mechanic's claim of lien for $14,658.50 against the property. Blumenthal executed a promissory note in favor of Nowack for the outstanding amount, and Nowack continued working.

After Nowack recorded its December 5, 1983, claim of lien, Blumenthal attempted to secure financing from World Savings to proceed with the project. Paul Nowack, principal of Nowack, conceded that he understood that before World Savings would fund such a loan, it would require all mechanics' liens to be removed from the record. Nowack was experienced enough to understand that construction lenders do not want to obtain liens junior to a mechanic's lien. Nowack executed a "Release of Lien" describing the property and providing in pertinent part: "That certain mechanics' notice and claim of lien recorded December 5, 1983 . . . is hereby fully satisfied, released, and discharged." Nowack claimed he executed the release not intending to give up any mechanic's lien rights, but only to secure payment from Blumenthal on the promissory note.

On June 21, 1984, several events occurred simultaneously: Blumenthal conveyed title to the property to Ridgecrest Townhomes, Ltd., a limited partnership of which he was the general partner; World Savings made a construction loan to Ridgecrest Townhomes, Ltd., for continued development and construction of the project, and received and recorded a $4.1 million construction loan deed of trust to secure the loan; Blumenthal paid off his promissory note to Nowack; and the "Release of Lien" from Nowack was recorded.

Before recording these transactions, Founders Title Company, which acted as the escrow for the sale-loan transaction, was requested by World Savings to ensure its deed of trust would be a first lien against the property. John Wagnon, a vice-president of Founders, stated in his declaration in support of summary judgment that he made a physical site inspection of the

property on June 21, 1984, "for the specific purpose of inspecting the property to determine whether a work of improvement had commenced on the subject property. On that date, actual physical construction of the development of the property had not begun, no work or labor on the property was apparent or visible, and no construction materials had been delivered to the property. There were no laborers or other personnel on site, nor were there any signs posted by contractors, subcontractors, or construction lenders. After my inspection, Founders Title agreed to and did issue an ALTA lender's policy in favor of World Savings & Loan Association, insuring that its construction loan deed of trust was a first lien against the property."

Nowack continued to perform engineering services. On October 3, 1985, Nowack recorded its mechanic's lien claim for $88,760 against the property. On December 12, 1985, Nowack brought an action for a money judgment and to foreclose its October 3, 1985, claim of lien. On June 19, 1986, Nowack filed its first amended complaint to foreclose its October 1985 claim of lien. In neither complaint did Nowack name World Savings as a party defendant.

In the meantime, Ridgecrest Townhomes, Ltd. had defaulted on its loan payments as well. On May 24, 1985, World Savings recorded a notice of default and election to sell under its construction loan deed of trust. On August 12, 1987, World Savings was issued a trustee's deed at the foreclosure sale. On February 16, 1988, World Savings transferred the property to Santa Clara by grant deed. Nowack obtained a money judgment and judgment to foreclose its mechanic's lien on June 23, 1988, and sought to enforce its judgment against the property.

The instant action followed when, on August 23, 1988, Santa Clara commenced proceedings against Nowack to quiet title to the property and for declaratory and injunctive relief to prevent Nowack from enforcing its judgment to foreclose the mechanic's lien and from proceeding with a sheriff's sale. Nowack filed a cross-complaint seeking declaratory relief and contending that its 1985 mechanic's lien was not extinguished by the World Savings sale foreclosing its 1984 deed of trust, because Nowack's mechanic's lien "related back" to 1979 when Nowack commenced the "work of improvement" by setting three-quarter-inch iron boundary markers beneath the surface at the corners of the property, and that the release executed by Nowack did not release its mechanic's lien.

On March 9, 1989, the trial court granted partial summary adjudication of issues, on the following issue: "That the 'RELEASE OF LIEN' . . . released the 'Mechanics' Lien' attached as Exhibit 1 to the cross-complaint [the

December 5, 1983, mechanic's lien claim]." Following additional discovery the court granted Santa Clara's renewed motion for summary judgment on the complaint and cross-complaint, and by order entered June 23, 1989, the court quieted Santa Clara's title to the property against Nowack's October 3, 1985, claim of lien against the judgment Nowack had obtained upon foreclosure of that lien claim and against all postjudgment proceedings undertaken by Nowack to enforce the judgment against the property. The court permanently enjoined Nowack from enforcing its judgment foreclosing the October 3, 1985, claim of lien against the property and entered judgment against Nowack on its cross-complaint, ruling Nowack was not entitled to a declaration that its October 3, 1985, claim of lien was senior to World Saving's June 21, 1984, deed of trust. A timely appeal followed.

### Discussion

"A motion for summary judgment 'shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' (Code Civ. Proc., § 437c, subd. (c).) ■ The purpose of summary judgment is to penetrate evasive language and adept pleading and to ascertain, by means of affidavits, the presence or absence of triable issues of fact. [Citation.]" (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

### I.

### General Principles

Mechanic's lien law derives from our state constitution. (Cal. Const., art. XIV, § 3.)[1] ■ "Mechanics' liens are a statutory exception to the general rules of priority. They are one of the major classes of off-record interests which are senior to claims of bona fide purchasers. Although the mechanic's lien attains priority from the date work commences, the claim of lien may not be recorded until much later. During the period of time between the commencement of work and the recordation of the claim of lien, the

---

[1] "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens." (Cal. Const., art. XIV, § 3.) "The mechanics' lien is the only creditors' remedy stemming from constitutional command . . . ." (*Coast Central Credit Union* v. *Superior Court* (1989) 209 Cal.App.3d 703, 708 [257 Cal.Rptr. 468].)

mechanic's lien has an off-record priority.[2]" (3 Miller & Starr, *supra*, § 8:107, at p. 479, fns. omitted.) This consequence flows from the fact that " '[t]he statutory "claim of lien" is not the lien. The lien is created by our constitution. The "claim of lien," and the remedy of foreclosure, are the vehicle and the procedure which the Legislature has provided, by law, for the speedy and efficient enforcement of such liens.' " (*Coast Central Credit Union* v. *Superior Court, supra,* at p. 710, quoting *Maris Management Corp.* v. *Assured Drywall & Textures* (1984) 152 Cal.App.3d 268, 275 [199 Cal.Rptr. 309].)

■ "Although there is no specific statutory authority, since all mechanics' liens attach on commencement of work on the project, all mechanics' liens have equal priority among themselves." (3 Miller & Starr, Current Law of California Real Estate, *supra,* § 8:107, at p. 479, fns. omitted.)

■ "Since the liens of all mechanics relate back to the date the first work commences, a mechanic's lien has priority over any interest recorded after the work commences . . . . In other words, when work has started on the project before the construction loan trust deed is recorded, the lien of the deed of trust is junior to every mechanic's lien regardless when the work or materials were actually incorporated into the project by the mechanic claiming the lien. [¶] . . . [¶] In such cases the lien of the deed of trust is junior to the mechanics' liens even though all of the mechanics who performed labor or supplied materials prior to the recordation of the trust deed *have been paid* and the unpaid mechanics' liens are for work performed after the trust deed is recorded." (3 Miller & Starr, Current Law of California Real Estate, *supra,* § 8:108, at pp. 481-482, fns. omitted, italics in original.)

■ "[O]ur courts 'have uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen.' (*Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 826-827 [132 Cal.Rptr. 477, 553 P.2d 637] . . . , fn. omitted.)" (*Coast Central Credit Union* v. *Superior Court, supra,* 209 Cal.App.3d 703, 708.)

---

2 "Thus, for example, a mechanic's lien for work which commenced prior to a conveyance of the improved property has a valid lien on the purchaser's title, even though the claim of lien is not recorded until after the conveyance, and there was no pre-lien notice given to the purchaser, and the purchaser paid value for the property without notice of the work or the claim of lien." (3 Miller & Starr, Current Law of California Real Estate (2d ed. 1989) § 8:107, at p. 479, fns. omitted.)

## II.

### *The Release of Lien Executed by Nowack Extinguished Its Mechanic's Lien*

■ Nowack contends that although the release of lien it executed may have released the "claim of lien" it recorded on December 5, 1983, it did not wipe out its inchoate personal right to a lien which attached in 1979 when Nowack set the boundary pipes on the property. Nowack claims the lien survived and was perfected by the filing of its new lien claim on October 3, 1985. Because that lien claim related back to the November 1979 commencement of a work of improvement, Nowack argues, it has priority over the construction loan deed of trust recorded by World Savings on June 21, 1984. We disagree.

The release of lien executed by Nowack states that the mechanic's notice and claim of lien recorded December 5, 1983, is hereby "fully satisfied, released and discharged." Nowack acknowledged that he knew World Savings would not release construction funds unless all mechanic's liens were cleared from the property. The language of the release, while referring to the December 5, 1983, "claim of lien," gives no hint that it was not intended to release the underlying inchoate lien right. Certainly World Savings would not have released construction funds had it believed the release insufficient to release the underlying lien upon which that claim was based. Under Civil Code section 3268, the parties may waive or release the benefits of the mechanic's lien laws, unless otherwise prohibited by statute or public policy.[3] Nowack points to Civil Code sections 3154 and 3262 as statutory prohibitions upon the release executed here.

### A. *Civil Code Section 3154.*

Civil Code section 3154 provides in relevant part: "(a) At any time after the expiration of the time period specified by Section 3144 with regard to the period during which property is bound by a lien after recordation of a claim of lien, where no action has been brought to enforce such lien, the owner of the property or the owner of any interest therein may petition the proper court for a decree to release the property from the lien. [¶] (b) The petition shall be verified and shall allege all of the following: . . . (4) *That*

---

[3] Civil Code section 3268 provides: "Except where it is otherwise declared, the provisions of the foregoing titles of this part, in respect to the rights and obligations of parties to contracts, are subordinate to the intention of the parties, when ascertained in the manner prescribed by the chapter on the interpretation of contracts; and the benefit thereof may be waived by any party entitled thereto, unless such waiver would be against public policy."

*the lien claimant is unable or unwilling to execute a release of the lien or cannot with reasonable diligence be found.*" (Italics added.)

■ A decree pursuant to Civil Code section 3154 releasing property from mechanic's liens extinguishes the lien and there is no longer a lien to be enforced to serve as a basis for a new "claim of lien." (*Maris Management Corp.* v. *Assured Drywall & Textures, supra,* 152 Cal.App.3d 268, 274; see *Coast Central Credit Union* v. *Superior Court, supra,* 209 Cal.App.3d at p. 710.) " 'By enacting section 3154, the Legislature has provided, by law, that if the lienor does not comply with the procedures which it has provided for the enforcement of such liens, then the owner may petition the court for a decree to release the property from the lien. Once that decree has been made, there is no longer a lien upon the property, based upon the same work and materials, to serve as the basis for a new claim of lien. The decree of release operates against the lien on the property, not against the claim of lien.' (*Id.,* at p. 275.)" (*Coast Central Credit Union* v. *Superior Court, supra,* at p. 710, quoting *Maris Management Corp.* v. *Assured Drywall & Textures, supra,* 152 Cal.App.3d at p. 275.)

According to its plain language, Civil Code section 3154 anticipates that a mechanic may agree to release of its lien and that such release is effective without judicial intervention. The statute is invoked only when the holder of the interest in the property can verify that the lien claimant was unable or unwilling to execute a release of the lien or could not be found. (Civ. Code, § 3154, subd. (b)(4).) Here, of course, Nowack was not only able and willing to execute a release, but actually did so. ■ There was no reason for World Savings to utilize the statutory procedure, nor could it do so, where the mechanic's lien holder had executed a release.

Nowack contends that a recent opinion of this district, *Coast Central Credit Union* v. *Superior Court, supra,* 209 Cal.App.3d 703, supports its position that the *sole* mechanism by which property may be released from a mechanic's lien is a decree issued pursuant to Civil Code section 3154. In that case, construction lender Coast Central Credit Union recorded its deed of trust prior to commencement of work by a contractor. The owner of the property failed to pay the contractor, who timely recorded a claim of lien. However, the contractor did not commence a foreclosure action on the lien within the statutory 90-day period. (Civ. Code, § 3144, subd. (a).) He later filed a second claim of lien, and began an action to foreclose the lien. The lender sought summary judgment, arguing that the lien had expired upon failure of the contractor to timely commence a foreclosure action. The court denied summary judgment and the Court of Appeal denied the writ sought by the lender. The appellate court held that so long as the lender took no

action to release the lien under Civil Code section 3154, the contractor's inchoate constitutional right to a lien survived, and the timely filing of a new claim of lien created a new lien on the property. The court distinguished *Maris Management Corp.* v. *Assured Drywall & Textures, supra,* 152 Cal.App.3d 268, pointing out that unlike the owner in *Maris Management,* Coast had never availed itself of the remedies afforded under section 3154. (*Id.,* at p. 710.)

*Coast* does not stand for the proposition that a mechanic's lien right cannot be extinguished except by an action under section 3154. Rather, Coast holds that *failure to commence timely a foreclosure proceeding* does not extinguish the right to a mechanic's lien, although it automatically nullifies the mechanic's lien claim. The constitutional right to a lien remains and may be perfected by complying with statutory conditions precedent. (209 Cal.App.3d at p. 711.) *Coast* does not address the effect of a written release of lien and it is of no help to Nowack on this question.

B. *Civil Code Section 3262.*

At the time of execution of the release in this case, Civil Code section 3262 provided in pertinent part:

"(a) Except as otherwise provided in subdivision (b), neither the owner nor original contractor by any term of their contract, or otherwise, shall waive, affect, or impair the claims and liens *of other persons* whether with or without notice, and any term of the contract to that effect shall be null and void. [Italics added.]" (Added by Stats. 1969, ch. 1362, § 2, p. 2780, operative Jan. 1. 1971. Amended by Stats. 1972, ch. 1319, § 1, p. 2627.)[4]

By its terms this section limits the ability of the original contractor to waive or impair the claims and liens *of other persons.* The clear implication is that the contractor may waive or release *his own claim,* when doing so does not affect or impair the claims or liens of other laborers or subcontractors. In this case, there is no hint that the release executed by Nowack impaired or affected any other claimant or mechanic's lien holder. Nothing in the record indicates that any other mechanic or materialman had commenced work on the property or supplied materials to the site at the time the release was recorded. Indeed, the visual inspection of the property made

---

[4]Effective January 1985, the current statute prohibits an owner or original contractor from waiving, affecting or impairing the claims or liens of others except by their written consent. In addition, the statute specifies in detail the form for such waivers by subcontractors or other claimants. (Civ. Code, § 3262, amended by Stats. 1984, ch. 185, § 1, pp. 560-563.)

by John Wagnon on behalf of Founders Title bears this out. As between the owner, World Savings as the lender and Nowack, Nowack was certainly empowered to release its own lien rights.

Moreover, to allow it to do so makes sense here as World Savings did what it could to protect its priority. It obtained a release from Nowack, the only mechanic's lien holder of which it was aware. It obtained title insurance to insure the priority of its deed of trust. That insurance policy was issued only after a title company officer conducted a physical inspection of the site specifically seeking evidence of construction activity indicating the presence of unknown mechanics' liens. The Nowack release and the World Savings deed of trust were recorded on the same day the inspection occurred. Because Nowack was able and willing to release its claim in order to induce funding of the construction loan and, as a direct result, payment of the Blumenthal note, World Savings would not have met the conditions required for obtaining a decree under Civil Code section 3154. Furthermore, Nowack not only benefitted from its release of the lien by receiving payment on the Blumenthal note, but it also was in a position to protect its own interests and exercise bargaining leverage by refusing to execute a release, maintaining its priority and foreclosing its mechanic's lien.

Consequently, we conclude that nothing in the statutory scheme or case law prevented the release executed by Nowack from effectively extinguishing both its December 5, 1983, claim of lien and the inchoate constitutional mechanic's lien right upon which such claim was based. ■■■■ ■ World Savings's deed of trust had priority over Nowack's October 3, 1985, mechanic's lien claim, and foreclosure of the deed of trust extinguished Nowack's interest in the property.[5] There remained no triable issue of material fact and summary judgment was properly entered in favor of respondent Santa Clara.[6]

---

[5] It should be noted that Nowack may still pursue other avenues for repayment of its debt. Release of the lien does not extinguish the debt. Nor does it bar causes of action other than that for foreclosure of the mechanic's lien. (*Maris Management Corp.* v. *Assured Drywall & Textures, supra,* 152 Cal.App.3d 268, 274, fn. 4.)

[6] Because we conclude that the release effectively released any mechanic's lien rights upon which the December 5, 1983, claim was based, we need not determine whether in fact the setting of three-quarter-inch boundary pipes under the ground at the corners of the property constituted works of improvement giving rise to a mechanic's lien. (See *Nolte* v. *Smith* (1961) 189 Cal.App.2d 140 [11 Cal.Rptr. 261, 87 A.L.R.2d 996] [holding setting of boundary pipes below ground level sufficient]; but see, *Walker* v. *Lytton Sav. & Loan Assn.* (1970) 2 Cal.3d 152 [84 Cal.Rptr. 521, 465 P.2d 497] [requiring visible physical construction]; *South Bay Engineering Corp.* v. *Citizens Sav. & Loan Assn.* (1975) 51 Cal.App.3d 453 [124 Cal.Rptr. 221] [holding markers and stakes used to assist preparation of maps and plans and left on the

The judgment is affirmed. Respondent is awarded its costs on appeal.

Benson, J., and Peterson, J., concurred.

A petition for a rehearing was denied February 25, 1991.

---

property did not improve or alter the ground and provided an insufficient basis for priority over recorded deed of trust].)

   Neither are we required to determine whether Nowack's failure to name World Savings or its successor, Santa Clara, in its action to foreclose the 1985 mechanic's lien forfeited Nowack's lien rights in the property as against World and Santa Clara. (See *Monterey S.P. Partnership* v. *W. L. Bangham, Inc.* (1989) 49 Cal.3d 454 [261 Cal.Rptr. 587, 777 P.2d 623].)