[No. B120486. Second Dist., Div. Three. Jan. 7, 1999.]

MARK R. SOLIT, Cross-complainant and Appellant, v.
TOKAI BANK, LIMITED, NEW YORK BRANCH, Cross-defendant and
Respondent.

## COUNSEL

Greenberg, Glusker, Fields, Claman & Machtinger, Michael K. Collins and Michael A. Greene for Cross-complainant and Appellant.

Bate & Peterson, David H. Bate and John W. Peterson for Cross-defendant and Respondent.

## OPINION

**CROSKEY, Acting P. J.**—Mark R. Solit (Solit) is a defendant and cross-complainant in this matter. In his cross-complaint, he alleges, among others, a cause of action to foreclose a mechanic's lien against certain real property located in Santa Monica, California, owned by Sam and Claire Stein (the Steins). At the time Solit filed his lien, the property was encumbered by a construction loan from Tokai Bank, Limited, New York Branch (Tokai).

Tokai brought a motion for summary adjudication as to this cause of action on the ground that Solit had not commenced his foreclosure action within the statutorily mandated 90-day period following the recording of the mechanic's lien. The lien Solit sought to foreclose had been recorded on October 22, 1990. However, it was based on the same underlying claim for payment (although in a lesser amount) as to which he had previously filed a lien on March 7, 1990. Because he failed to file a timely action (i.e., within 90 days) to enforce that lien, and after Tokai had demanded that he do so and threatened to seek a court decree releasing the property from the lien, he filed and recorded a lien release on August 28, 1990. In ruling on Tokai's motion, the trial court concluded that because Solit had released the March 7 lien, the October 22 lien which he subsequently recorded was not valid or enforceable. It therefore granted Tokai's motion for summary adjudication. After other proceedings were concluded, a judgment was entered in favor of Tokai, and Solit appeals.

We reverse, because, as a matter of law, Solit's voluntary, gratuitous release of the first lien did not impair his right to record a subsequent lien. In doing so, we have reconsidered and now overrule one of our prior decisions on which Tokai relies.

## Factual And Procedural Background

The Steins owned real property in Santa Monica on which the Santa Monica Beach Hotel project (the Project) was being built. Solit was the Steins' construction manager. Tokai was the construction lender. A dispute arose between the Steins and Solit. He recorded a claim of mechanic's lien against the subject property on March 7, 1990 (the March 7 lien). However, Solit did not commence an action to foreclose the mechanic's lien within 90 days after it was recorded, so under Civil Code section 3144[1] the March 7 lien became void and unenforceable.

On August 2, 1990, the Steins' attorneys wrote to Solit demanding that he remove the cloud on title caused by the expired claim of lien. They threatened to petition under section 3154[2] for an order releasing the lien and an award of attorney's fees unless Solit released the lien voluntarily. In response to this demand, Solit did execute a release of lien, which he caused to be recorded on August 28, 1990. The release stated: "The claim of lien recorded by Mark R. Solit on March 7, 1990, at 90-371657 of the Official Records . . . . is hereby released and discharged." On August 31, Solit's attorney sent the Steins' attorney a copy of the recorded release of lien. Solit received no compensation for causing the March 7 lien to be released, nor did the release indicate that the obligation on which the lien was based had ever been satisfied. Sometime prior to October 29, 1990, the Steins filed suit against Solit for breach of contract and other causes of action.

---

[1] All statutory references are to the Civil Code unless otherwise indicated.

Section 3144 provides: "(a) No lien provided for in this chapter binds any property for a longer period of time than 90 days after the recording of the claim of lien, unless within that time an action to foreclose the lien is commenced in a proper court, except that, if credit is given and notice of the fact and terms of such credit is recorded in the office of the county recorder subsequent to the recording of such claim of lien and prior to the expiration of such 90-day period, then such lien continues in force until 90 days after the expiration of such credit, but in no case longer than one year from the time of completion of the work of improvement. [¶] (b) *If the claimant fails to commence an action to foreclose the lien within the time limitation provided in this section, the lien automatically shall be null and void and of no further force and effect.*" (Italics added.)

[2] Section 3154 provides, in pertinent part:

"(a) At any time after the expiration of the time period specified by Section 3144 with regard to the period during which property is bound by a lien after recordation of a claim of lien, where no action has been brought to enforce such lien, the owner of the property or the owner of any interest therein may petition the proper court for a decree to release the property from the lien.

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(f) The prevailing party shall be entitled to attorneys' fees not to exceed one thousand dollars ($1,000).

"(g) Nothing in this section shall be construed to bar any other cause of action or claim for relief by the owner of the property or an interest in the property, nor shall a decree canceling a claimant's lien bar the lien claimant from bringing any other cause of action or claim for relief, other than an action foreclosing such lien. However, no other action or claim shall be joined with the claim for relief established by this section."

On October 22, 1990, Solit recorded a new claim of lien against the Project as instrument No. 90-1788205 (the October 22 lien) in the amount of $548,365.43. The amount claimed under the March 7 lien had been $1,015,032. On October 29, Solit filed a cross-complaint against the Steins, Tokai and others. It included a cause of action to foreclose a mechanic's lien. However, in his cross-complaint Solit erroneously referred to the March 7 lien and to instrument No. 90-371657 as the lien which he was seeking to foreclose. This appears to have been an inadvertent error since the mechanic's lien cause of action alleged a claim in the amount of $548,365.43, the actual amount of the October 22 lien.[3]

That it was an inadvertent error is further confirmed by what happened on November 2, 1990. On that date, Solit recorded a Notice of Pendency of Action and served it on the Steins and Tokai. The Notice of Pendency of action stated that the purpose of Solit's cross-complaint was to foreclose a mechanic's lien *in the amount of $548,365.43*, and identified the lien in question as having been recorded *on October 22 as Instrument No. 90-1788205.*

Meanwhile, during the course of the litigation, the Steins filed for bankruptcy, and ultimately ceased participating in this action. Tokai, however, remained an active participant and, on July 14, 1994, it filed a motion for summary adjudication on Solit's foreclosure of his mechanic's lien cause of action (No. 1 JA-C 222-252). Tokai, based on the first amended cross-complaint's reference to the March 7 lien, argued that such lien was barred by section 3144 and by the August 28, 1990, recorded release of lien.[4]

Upon receiving Tokai's motion for summary adjudication, Solit realized that the first amended cross-complaint had erroneously referred to the March 7 lien and instrument No. 90-371657, instead of to the October 22 lien and instrument No. 90-1788205. Solit therefore filed a motion for leave to file a second amended cross-complaint or, in the alternative, to interlineate the

---

[3]Solit filed a first amended complaint two days after filing his original cross-complaint. The purpose of the first amended complaint was to add a stop notice claim against Tokai. The error relating to the identification of the lien sought to be foreclosed was not corrected at this time, presumably because Solit was yet unaware of the error.

[4]We note, however, that in an earlier, unsuccessful motion for summary judgment, filed July 3, 1991, Tokai had asserted as an undisputed fact that the October 22 lien was the lien Solit sought to foreclose by his cross-complaint.

first amended cross-complaint so as to identify the October 22 lien as the lien he sought to enforce. Solit, although his motion for leave to file a second amended cross-complaint had not yet been heard, also filed an opposition to the motion for summary adjudication on the ground that while an action based on the March 7 lien would be barred, his action was really based on the October 22 lien.

Tokai opposed the motion for leave to file a second amended cross-complaint, arguing that granting Solit leave to amend was pointless, because Solit's release of the March 7 lien had extinguished his underlying, inchoate lien rights, which could not be revived by recording a subsequent lien. Tokai made this same argument in its reply to Solit's opposition to its motion for summary adjudication. Solit disputed the allegedly terminal effect which Tokai argued his release of the March 7 lien would have on his lien rights. He also contended that (1) while section 3144 makes specific liens null and void, it does *not* prevent a lien claimant from recording another timely lien, and (2) the release of lien he recorded affected only the specific lien identified in the release, and did not prevent him from recording subsequent liens for the same work as long as they were timely under section 3115[5] or section 3116.[6]

Tokai's motion for summary adjudication and Solit's motion for leave to file a second amended cross-complaint were heard on August 19, 1994. The trial court ruled, as a matter of law, that Solit's release of the March 7 lien extinguished all of Solit's lien rights against the property, thus making any subsequent liens, including the October 22 lien, unenforceable. The trial court specifically stated that "The evidence clearly shows that the parties intended the release [of the March 7 lien] to have the same effect as a decree under section 3154, and the effect of such a decree would be to preclude the foreclosure of a new claim of lien. . . ." Solit argued that, in fact, by acceding to the Steins' demand that the lien be released *or else* they would seek a decree under section 3154, he had demonstrated an intent to *avoid* the effect of a decree under section 3154. However, the trial court did not agree

---

[5]Section 3115 provides: "Each original contractor, in order to enforce a lien, must record his claim of lien after he completes his contract and before the expiration of (a) 90 days after the completion of the work of improvement as defined in Section 3106 if no notice of completion or notice of cessation has been recorded, or (b) 60 days after recordation of a notice of completion or notice of cessation."

[6]Section 3116 provides: "Each claimant other than an original contractor, in order to enforce a lien, must record his claim of lien after he has ceased furnishing labor, services, equipment, or materials, and before the expiration of (a) 90 days after completion of the work of improvement if no notice of completion or cessation has been recorded, or (b) 30 days after recordation of a notice of completion or notice of cessation."

with this analysis.[7] The court then concluded that this ruling was dispositive of both motions, so it granted Tokai's motion for summary adjudication of the seventh cause of action and denied Solit's motion for leave to file a second amended cross-complaint.

Solit moved for reconsideration of these rulings on the ground that he had new evidence of his and the Steins' intent as to the effect of the release of the March 7 lien in the form of declarations—all of which stated that neither Solit nor Sam Stein ever intended that the release of the March 7 lien would do anything other than clear the Steins' title with respect to that lien, and that they did not intend, by such release, to interfere with Solit's right to record a subsequent claim of lien. The court granted the motion for reconsideration, but, after reconsideration, again granted Tokai's motion for summary adjudication and denied Solit's motion for leave to file a second amended cross-complaint.

After all the causes of action in the complaint and cross-complaint had been otherwise disposed of, judgment was entered in favor of Tokai on Solit's cross-complaint. Solit has filed this timely appeal from the judgment.

## CONTENTIONS ON APPEAL

Solit contends that his release of the March 7 lien did not extinguish his constitutional inchoate right to a mechanic's lien, and that therefore the trial court erred by granting Tokai's motion for summary adjudication on the foreclosure of a mechanic's lien cause of action. He also contends that because the trial court erred as to the effect of the release, its denial of his motion for leave to file a second amended cross-complaint was an abuse of discretion. Tokai disputes these contentions.

## DISCUSSION

1. *The Trial Court Erred by Concluding That Solit Had Released All His Inchoate Lien Rights by Voluntarily Recording the Release of the March 7 Lien*

The mechanics' lien statutes, which are set out in the Civil Code commencing at section 3109, are based on article XIV, section 3 of the

---

[7]The parties' intent as to the effect of the release of the March 7 lien was an issue which was raised for the first time at the August 19 hearing. While this is an interesting argument, in view of the conclusion we reach in this matter it is not one which we need address.

California Constitution.[8] ■ "The mechanics' lien is the only creditors' remedy stemming from constitutional command and our courts 'have uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen.'" (*Coast Central Credit Union* v. *Superior Court* (1989) 209 Cal.App.3d 703, 708 [257 Cal.Rptr. 468], quoting *Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 826-827 [132 Cal.Rptr. 477, 553 P.2d 637].) "Generally, doubts concerning the meaning of the mechanics' lien statutes are resolved in favor of the claimant. [Citation.]" (*Coast Central Credit Union* v. *Superior Court, supra*, 209 Cal.App.3d at p. 711.)

Under the Civil Code provisions relating to mechanics' liens, a timely recorded mechanic's lien binds the property against which it is recorded for only 90 days, unless within that time an action is commenced to foreclose it. (§ 3144.) A lien is timely recorded and potentially enforceable if it is recorded within a statutorily prescribed period of time after the claimant has finished supplying labor or materials, or after a stop notice or notice of completion has been filed. (§§ 3115, 3116.)[9] If the claimant fails to commence an action to foreclose a timely recorded lien within 90 days, the lien "automatically shall be null and void and of no further force and effect." (§ 3144, subd. (b).) If the claimant does not bring the foreclosure action to trial within two years after commencing it, the trial court has the discretion to dismiss the action for want of prosecution (§ 3147),[10] and if the action is dismissed with prejudice, then the dismissal "shall be equivalent to the cancellation and removal from the record of such lien." (§ 3148.)[11] So, too, if the action goes to trial and is resolved by way of a judgment that no lien exists, such judgment "shall be equivalent to the cancellation and removal from the record of such lien." (*Ibid.*)

As noted, under section 3144, if the claimant does not commence a foreclosure action within 90 days after filing the lien, the lien automatically "shall be null and void and of no further force and effect." But, given that

---

[8]California Constitution, article XIV, section 3 provides: "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens."

[9]There is no dispute here that Solit's October 22 lien was filed within the prescribed time limits.

[10]Section 3147 provides: "If the action to foreclose the lien is not brought to trial within two years after the commencement thereof, the court may in its discretion dismiss the same for want of prosecution."

[11]Section 3148 provides: "In all cases the dismissal of an action to foreclose the lien (unless it is expressly stated that the same is without prejudice) or a judgment rendered therein that no lien exists shall be equivalent to the cancellation and removal from the record of such lien."

the lien is recorded and a matter of public record, how does the property owner make the fact that the lien is now null and void and of no further force and effect also a matter of public record so as to clear the cloud on his or her title created by the recorded lien? Obviously, the property owner can simply demand that the claimant record, or provide the owner with, a recordable document indicating that the lien is no longer of any effect, that is, a release. But what if the claimant refuses to do so, or cannot be found, or is dead, or is incompetent? The answer is found in section 3154.

Under section 3154, after expiration of the 90-day period within which a foreclosure action must be commenced after a lien is recorded, if no action has been commenced to enforce such lien, and if the claimant is unable or unwilling to execute a release of the lien or cannot with reasonable diligence be found, then the owner of the property or the owner of any interest therein may petition the court for a decree to release the property from the lien. The verified petition must allege certain facts, including that the owner of the property or interest in the property has not filed for relief under any law governing bankrupts, and that "there exists no *other* restraint to prevent the lien claimant from *filing* to foreclose his or her lien." (§ 3154, subd. (b)(5), italics added.) Under this expedited procedure,[12] a judgment in favor of the petitioner results in a decree which, when recorded, will mean that the property described in the decree "shall be released from the lien." (§ 3154, subd. (e) (4).)

The fact that an owner has used the procedure available under section 3154 to obtain a recordable decree so that record title may be made to reflect that a specific lien has, by operation of section 3144, automatically become "null and void and of no further force and effect" does not prevent either the owner or the claimant from taking further proceedings to resolve any disputed issues between them. (§ 3154, subd. (g).) The only further proceeding which *is* specifically mentioned as being barred once a decree is obtained is "an action foreclosing *such* lien." (*Ibid.*, italics added.)[13]

The only logical conclusion to be drawn from this statutory scheme is that once a timely recorded lien becomes null and void because the claimant did not commence an action to enforce it, such lien can be removed as a cloud upon title either by the claimant's voluntary recordation of a release of such lien, or by court decree pursuant to section 3154. But either method only goes to the removal of a particular lien as a cloud on title, and

---

[12]The hearing on the petition shall be set for a date not more than 30 days following the filing of the petition, and may be continued beyond the 30-day period only upon a showing of good cause. (§ 3154, subd. (c).)

[13]See footnote 2, *ante.*

nothing in the statutory scheme indicates that either method has any effect on whether the claimant can record a subsequent lien on the property, which, if it is timely recorded pursuant to section 3115 or 3116, can be enforced within 90 days after such recordation even though based on the same work performed or materials supplied as the prior lien. In other words, neither a voluntary release of a null and void lien, nor a decree ordering the release of such a lien, has an effect on the validity of any subsequently recorded lien, whose validity must be determined on such subsequent lien's own merits.

This is the result reached by a number of other courts. The California Supreme Court so suggested in *Schwarz & Gottlieb, Inc.* v. *Marcuse* (1917) 175 Cal. 401, 415-416 [165 P. 1015], when it interpreted former Code of Civil Procedure section 1190, which later became section 3144, and held that ". . . the limitation expressed in section 1190 applies to each of such claims as such and not to all rights which the claimant may possibly enjoy under any one of them."

In *Koudmani* v. *Ogle Enterprises, Inc.* (1996) 47 Cal.App.4th 1650 [55 Cal.Rptr.2d 330], the appellate court, dealing with sections 3144 and 3154, held that a mechanic's lien claimant's execution of a release of its first claim of lien for materials did not extinguish the second lien the claimant thereafter timely recorded with respect to the same materials because the release of the first claim of lien did not conclusively and unequivocally represent that its claim for materials was satisfied. According to the *Koudmani* court, because the release of the first lien did not clearly state that the claimant's claim for materials was satisfied, but only stated that the lien was " 'hereby satisfied *or otherwise released and discharged*' " (47 Cal.App.4th at p. 1659), the release did not extinguish the claimant's constitutional inchoate right to a mechanic's lien as a remedy for obtaining the unpaid claim.

Under *Koudmani* it is only when a release states that the claim of lien has been *fully satisfied* that the claimant's inchoate right to a lien, upon which any claim of lien is based, is extinguished, because then the underlying obligation has been paid according to the express terms of the release. (47 Cal.App.4th at pp. 1658-1659.) Thus, so long as the inchoate lien right has not been extinguished, the claimant may record subsequent liens based on the same work or material as the released claim of lien, and any release which does not unequivocally indicate that the underlying obligation has been satisfied frees the property *only* of the particular claim of lien that the release expressly identifies. (*Id.* at pp. 1657-1658; see also *Coast Central Credit Union* v. *Superior Court, supra,* 209 Cal.App.3d 703, 711; *Electric Supplies Distributing Co.* v. *Imperial Hot Mineral Spa* (1981) 122 Cal.App.3d 131, 135-136 [175 Cal.Rptr. 644]; Cal. Mechanic's Liens and Other Remedies (Cont.Ed.Bar 2d ed. 1988) § 2.30, p. 88 ["[t]he most likely interpretation [of the meaning of section 3144, subdivision (b)] is that the expiration

of the 90-day period results in expiration of the mechanics' lien created by that particular lien claim, but does not terminate the claimant's lien rights"].)

In our view, the language of sections 3144 and 3154 is not ambiguous. Those sections by their terms apply *only* to a specific lien which has become null and void through the claimant's failure to file an action to enforce it within 90 days of the date such lien was recorded, and do *not* apply to any not-yet-filed-and-timely liens which the claimant could record based on his or her inchoate lien rights and on the fact that the underlying obligation has still not been satisfied. Thus, there is no need to engage in any rules of construction to achieve the statutes' remedial purpose and to balance the rights of claimants against the rights of property owners. That balancing has already been accomplished by the Legislature, which has provided a way for property owners to remove stale claims from their titles, while allowing claimants to pursue fresh, timely recorded, and timely enforced liens to recover moneys for improvements actually made to the property.[14]

Tokai's reliance on our opinion in *Maris Management Corp.* v. *Assured Drywall & Textures* (1984) 152 Cal.App.3d 268 [199 Cal.Rptr. 309] does not aid its position. In *Maris*, we held that once a decree released a property from a lien pursuant to section 3154, there was no longer a lien on the property. In reaching that conclusion, we emphasized a perceived distinction between a "lien" and "claim of lien." We said, "[t]he term 'lien' denotes the interest of the mechanic, materialman or laborer in the property, gained by reason of the work or material which he has bestowed upon the property. [Citation.] The term 'claim of lien' is the verified 'written statement' which the law permits to be recorded for the purpose of providing speedy and efficient enforcement of the lien. [Citation.] Thus, sections 3115 and 3116 provide that the original contractor or other claimant, 'in order to enforce a *lien*, must record his *claim of lien*' within the specified time periods. And section 3154 provides that when [90 days] have elapsed 'after recordation of a *claim of lien*, where no action has been brought to enforce such lien, the owner . . . may petition the proper court for a decree to release the property from the *lien*.' " (152 Cal.App.3d at pp. 273-274, original italics.) We then held that "[o]nce that decree has been made, there is no longer a lien upon

---

[14]And even if the statute were ambiguous, California has a strong tradition of liberal construction of mechanics' lien laws *in favor of the workers to whom debts may be owed.* (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 462 [253 Cal.Rptr. 236, 763 P.2d 1326]; *Connolly Development, Inc.* v. *Superior Court, supra,* 17 Cal.3d at pp. 826-827.) This tradition is grounded in the recognition that mechanics' liens are the only creditors' remedies with a constitutional foundation. (*Connolly Development, Inc.* v. *Superior Court, supra,* 17 Cal.3d at pp. 826-827.) Therefore, even if we were to conclude that the relevant sections were ambiguous with respect to their application to the facts of this case, we would construe any ambiguity in favor of Solit, the person who provided labor and/or materials to improve the property.

the property, based upon the same work and materials, to serve as a basis for a new claim of lien." (*Id.* at p. 275.) Thus, once the decree has been issued, the mechanic may not record another claim of lien.

Applying this reasoning, Tokai argues that Solit's voluntary release, since it was done in response to a threatened petition for a decree under section 3154, should have the same consequence as in *Maris*. Even if we accept such reasoning, and its logic is appealing, the viability of Tokai's argument depends on the vitality of *Maris* and its holding that the term "lien" as used in section 3144, subdivision (b), refers to the underlying right to the lien. This case presents us with the opportunity to revisit this issue. We have done so and we now agree with the criticism of *Maris* leveled by the court in *Koudmani* v. *Ogle Enterprises, Inc., supra,* 47 Cal.App.4th at pages 1655-1656.

As the *Koudmani* court emphasized, and as we ignored in *Maris*, a mechanic's *right* to a lien rests on the Constitution, not on the procedures outlined in the Civil Code. As *Koudmani* put it, "[w]e believe the distinction drawn by *Maris* between the terms 'lien' and 'claim of lien' is inaccurate and misleading. The true distinction is that between the inchoate constitutional *right* to a lien and the *lien* itself. *Maris* confuses these two concepts, treating them as if they are the same. The term 'lien' is statutorily defined as 'a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act.' (§ 2872.) Code of Civil Procedure section 1180 similarly defines a 'lien' as 'a charge imposed upon specific property, by which it is made security for the performance of an act.' The California Constitution gives materialmen . . . an inchoate *right* to a lien. However, this inchoate right is meaningless unless it is exercised by the recording of a claim of lien. Unless and until a claim of lien is recorded, there is no lien, because there is no charge imposed upon the subject property to secure the owner's performance of the act of payment to the claimant. [¶] Thus, it is more accurate to view the terms 'lien' and 'claim of lien,' as used in the mechanics' lien statutes, as synonymous rather than as terms with distinct meanings, for the right to a lien against property does not become an actual lien encumbering the property until a claim of lien is recorded." (47 Cal.App.4th at pp. 1655-1656.)

Another court has expressed the same thought. "The recordation of a timely claim of lien transforms the claimant's inchoate personal right created by our Constitution into a tangible lien on the property. Only this lien, which was created by the statutory scheme, is automatically nullified by a failure to timely commence a foreclosure proceeding. The constitutional right to a lien

remains and may be perfected so long as the claimant can comply with the conditions precedent set forth in the statutory scheme. [Citations.] [¶] . . . To read subdivision (b) of section 3144 as automatically extinguishing a laborer's or materialman's *right* to a lien upon failure to foreclose would give a windfall to property owners which the Legislature never intended." (*Coast Central Credit Union* v. *Superior Court, supra,* 209 Cal.App.3d at p. 711, italics added.)

After reconsideration of this important issue, and in light of the sound reasoning expressed in both *Koudmani* and *Coast Central,* we have concluded that *Maris* was wrongly decided. We improperly treated the inchoate constitutional right to a lien and the lien itself as synonymous, and, to the extent the opinion in *Maris* suggests that a decree pursuant to section 3154 releasing a stale mechanic's lien, or a gratuitous voluntary release recorded under threat of a section 3154 petition, would preclude the claimant from recording another claim of lien, based on the same work and materials as the released lien, even though such subsequently recorded lien was timely under section 3115 or section 3116, we overrule it.[15]

Tokai contends that its interpretation of these statutes, to wit, that a voluntary, noncompensated release of lien, even though it does not state or acknowledge that the underlying obligation has been satisfied, nonetheless abrogates all future lien rights of the claimant, strikes the constitutionally required balance between claimants' and owners' interests. We disagree. Such an interpretation unnecessarily and unfairly favors owners' interests at the expense of claimants who may have valid claims for reimbursement, and could result in windfalls to owners. The view we express here of the statutes' meaning avoids such windfalls. Furthermore, under our interpretation of the statutory scheme, a claimant who fails to timely enforce a lien, and who therefore must record a release of such lien and then, if there is time, record a subsequent lien, still has a very limited window of opportunity within which to re-record a valid lien. (§§ 3115, 3116.)

Accordingly, we hold that Solit's voluntary release of his stale March 7 lien (1) affected only that lien, (2) simply removed that specific lien as a cloud on title to the Project, and (3) had no effect on Solit's right to record the otherwise timely subsequent lien of October 22. Thus, the trial court

---

[15]We exclude, of course, any voluntary release of lien which is recorded in consideration of payment to the mechanic or materialman of an amount which has been accepted in satisfaction of the underlying claim. In that regard, we note that in *Maris,* unlike the case here, the release specifically stated that *the underlying obligation had been satisfied.* (See, e.g., *Koudmani* v. *Ogle Enterprises, Inc., supra,* 47 Cal.App.4th at p. 1659; see also *Santa Clara Land Title Co.* v. *Nowack & Associates, Inc.* (1991) 226 Cal.App.3d 1558, 1566 [277 Cal.Rptr. 497].)

erred by granting Tokai's motion for summary adjudication on Solit's cause of action to foreclose his mechanic's lien.

### 2. *The Trial Court Erred by Denying Solit's Motion for Leave to File a Second Amended Cross-complaint*

The trial court, having erroneously concluded that Solit's voluntary release of the March 7 lien prevented him from filing any valid lien thereafter, denied as pointless Solit's motion for leave to file a second amended cross-complaint which would have alleged that he was attempting to foreclose the October 22 lien. For the reasons noted above, this was an erroneous conclusion, and therefore the trial court should have considered Solit's motion for leave to file an amended pleading on its merits, to wit, on whether Solit, the party seeking leave to amend, was not diligent in offering the amendment after knowledge of the facts, or whether the delay prejudiced Tokai, the adverse party. (*Roemer* v. *Retail Credit Co.* (1975) 44 Cal.App.3d 926, 939 [119 Cal.Rptr. 82].) ██ Generally, leave to amend must be liberally granted (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 939 [101 Cal.Rptr. 568, 496 P.2d 480]), provided there is no statute of limitations concern, nor any prejudice to the opposing party, such as delay in trial, loss of critical evidence, or added costs of preparation. (*Hirsa* v. *Superior Court* (1981) 118 Cal.App.3d 486, 490 [173 Cal.Rptr. 418].)

Because the trial court erroneously assumed that the proposed amendment would not state a viable cause of action, it failed to reach these issues of delay and prejudice. We could, therefore, send the motion for leave to file an amended pleading back to the trial court so that it could exercise its discretion on the motion, in light of the additional facts in the motion for reconsideration. However, we have reviewed the record related to the motion to amend, and conclude that there is only one way the trial court could exercise such discretion—to grant Solit's motion for leave to amend. Therefore, in the interests of judicial economy, we will reverse with directions to the trial court to vacate the order granting Tokai's motion for summary adjudication and the order denying Solit's motion for leave to file a second amended cross-complaint, and to enter instead an order denying Tokai's motion and an order granting Solit's motion.

### DISPOSITION

The judgment in favor of Tokai and against Solit is reversed. The trial court is directed on remand to vacate the order granting Tokai's motion for summary adjudication and the order denying Solit's motion for leave to file a second amended cross-complaint, and to enter instead an order denying

Tokai's motion for summary adjudication on Solit's seventh cause of action and an order granting Solit's motion for leave to file a second amended cross-complaint. Solit shall recover his costs on appeal.

Kitching, J., and Aldrich, J., concurred.