Filed 11/22/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LAMAR CENTRAL OUTDOOR, LLC, | B240060 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS131919) |
| v. | |
| CALIFORNIA DEPARTMENT OF TRANSPORTATION et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Soussan Bruguera, Judge. Affirmed.

Steptoe & Johnson and Michael F. Wright for Plaintiff and Appellant.

Ronald W. Beals, Chief Counsel, Jeanne E. Scherer, Deputy Chief Counsel, Jose Aguirre, Assistant Chief Counsel, Navtej S. Bassi and Matthew B. George for Defendants and Respondents.

_____

This appeal arises from a judgment denying a petition for writ of administrative mandate. The case presents issues concerning the proper interpretation of the Outdoor Advertising Act (hereafter, the Act).[1] Lamar Central Outdoor, LLC (Lamar) filed a petition for writ of administrative mandate to vacate a decision of the California Department of Transportation[2] (Department) denying Lamar's application for a permit for an electronic "message center" placed next to a public highway.[3] The trial court denied Lamar's writ petition, and entered judgment in favor of the Department. Lamar appeals. We affirm.

## FACTS

In 1995, Lamar built a wooden, double-sided, "static" billboard next to Highway 58 (Rosedale Highway) in Kern County pursuant to an outdoor advertising permit issued by the Department. The billboard site is located in an unincorporated area of the county, just outside the City of Bakersfield city limits. The billboard site is located in an area zoned for medium industrial uses, and is within 1,000 feet of numerous business and commercial activities.

---

[1] See Business and Professions Code section 5200 et seq. All further section references are to the Business and Professions Code.

[2] Our references to the Department include Malcolm Dougherty in his official capacity as the Department's director.

[3] As we read the record and the parties' briefs, an electronic "message center," an electronic "message display," and an electronic "message center display" are one-and-the-same by slightly variant names, and we may use the names interchangeably in this opinion. "Message center" is defined in section 5216.4 to mean "an advertising display where the message is changed more than once every two minutes, but no more than one every four seconds." In the case before us today, we are concerned with an electronic message center. Generally speaking, we would say that, in accord with section 5216.4, an electronic message center employs electronics, that is, lighting, or other form of electronic display screen, to change the advertising copy messages visible to onlookers. In any event, there is no dispute here that Lamar is seeking a permit for a message center within the meaning of, and subject to regulation under, the Act.

In August 2008, Lamar filed a permit application for an electronic message center at the site of its existing static billboard. This application did not reach the Department. In September 2008, Lamar converted the western face of its static billboard to an electronic message center. The location of Lamar's electronic message center is approximately 679 feet to the east of a pre-existing electronic message center. Lamar's electronic message center consists of a "flat screen" messaging area with light-emitting diodes or LED's. Messages are alternated by changing the color of the LED's. Evidence presented by the Department in the trial court showed that, during a site visit in 2009, five advertisements continuously "cycled" on Lamar's electronic message center. Each message lasted about five seconds; one entire cycle lasted about 25 seconds, and then repeated. Evidence presented by Lamar in the trial court showed that messages on its electronic message center "change[] less frequently than every four seconds," and do not "blink" or employ "moving" lights. Lamar's evidence also asserted that messages displayed on its electronic message center "do not turn on or off," but this must be considered in context in that one message must necessarily "turn off" in order for a different message to "turn on." The trial court found as a matter of law, that "all" electronic message centers which "cycle" through different advertising copy use lighting that is, "by definition, 'intermittent.'"

In March 2009, Lamar submitted another permit application. In May 2011, the Department denied Lamar's permit application on the ground that its electronic message center was located within 1,000 feet of two already-existing electronic message centers on the same side of Highway 58. The Department concluded that this spacing violated the Act, specifically, section 5405, subdivision (d)(1).

In May 2011, Lamar filed a petition for writ of administrative mandate seeking to vacate the Department's decision to deny the permit and to compel it to grant Lamar's application for a permit. The Department filed a cross-complaint seeking injunctive relief ordering Lamar to cease using its electronic message center. The parties tried the cause to the trial court in January 2012, and the court took the matter under submission. Shortly thereafter, the court issued a statement of decision which set forth the bases for

3

ruling that Lamar failed to meet its burden to show that the Department's denial of the permit application was unreasonable or legally incorrect.

In June 2012, the parties executed a stipulation to dismiss Lamar's remaining causes of action and the Department's cross-complaint. The stipulation reads in part:

"6. The parties wish to minimize further proceedings in [the trial] court and to proceed with Lamar's appeal [on its petition for writ of administrative mandate] as expeditiously as possible. To that end, the parties *wish to facilitate issuance of a final judgment* that *expressly resolves all remaining causes of action*.

"7. The parties therefore have agreed to dismiss, without prejudice, Lamar's fourth, fifth and sixth causes of action and [the Department's] cross-complaint, also without prejudice. . . ." (Italics added.)

On July 2, 2012, the trial court entered an order on the parties' stipulation. On the same date, the court signed and entered judgment in favor of the Department on Lamar's writ petition.

Lamar filed a timely notice of appeal.

## DISCUSSION

### I. Appealability

Our court requested the parties to brief the issue of whether "one final judgment" had been entered in the action, given their stipulation that Lamar would dismiss certain of its causes of action, and the Department would dismiss its cross-complaint for injunctive relief, to "facilitate issuance of a final judgment" and "proceed with Lamar's appeal on the merits as expeditiously as possible." The parties have submitted letter briefs arguing that the appeal is proper in that there are no claims still "actually pending" in the trial court, meaning the judgment on Lamar's petition for writ of mandate should be viewed as a final judgment in the action. (See *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743.) We find the judgment is appealable.

4

The parties acknowledge a line of published cases which have concluded that a dismissal without prejudice (as here), coupled with a waiver of the statute of limitations (not as here) violate the one final judgment rule. (See, e.g., *Don Jose's Restaurant, Inc. v. Truck Ins. Exchange* (1997) 53 Cal.App.4th 115, 116-119.) The parties argue that this appeal should be treated differently because their stipulation to dismiss certain claims did not include any provision which would "facilitate potential future litigation" of the claims involved in the case. (See *Abatti v. Imperial Irrigation Dist.* (2012) 205 Cal.App.4th 650, 665.) Further, the Department has represented to our court that, at present, there are "no intentions to resurrect any of the dismissed causes of action."

In the absence of any saving language in the parties' stipulation as to the claims dismissed by Lamar and Department, and given the Department's representation that it presently has no intentions to resurrect any claims against Lamar, we are satisfied that no claims are "legally alive" between the parties (see *Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1104-1105) and that a final judgment exists supporting appellate jurisdiction. If either party hereafter commences litigation related to Lamar's message center, the propriety of that future action will be an issue for another court on another day.

## II.     The Statutory Interpretation Issues

Lamar contends the judgment on its writ petition must be reversed because the spacing requirement that the Department and the trial court applied to Lamar's permit application for its electronic message center is the 1,000-foot requirement prescribed by section 5405, subdivision (d)(1), whereas the spacing requirement that truly governs by law is the 500-foot (or less) requirement prescribed by section 5408, subdivision (d). We disagree.

### A.  A General History of the Controlling Legislation

California has had a statutory scheme governing outdoor advertising adjacent to public highways since at least the early 1930's. (See Stats. 1933, ch. 341, pp. 938-946.) Before that decade was out, the Legislature had enacted a version of the Act. (See Stats. 1939, ch. 32, § 1, pp. 332-341.) There were ensuing tinkerings over time, until, in 1970, the Legislature repealed the whole of the then-existing Act and added the current version

5

of the Act found in the Business and Professions Code. (See Stats. 1970, ch. 991, §§ 1, 2, pp. 1763-1782.) In turn, it too has been changed by still more amendments.

The case before us today largely concerns amendments to the Act in 1989 and in 2000. In 1989, the Legislature enacted Senate Bill No. 510, affecting a single section of the Act, amending section 5405. (Stats. 1989, ch. 691, § 1, pp. 2262-2264.) In 2000, the Legislature enacted Senate Bill No. 1404, an omnibus bill, affecting various sections of the Act, as well as the Public Utilities Code, Streets and Highways Code, and Vehicle Code. (Stats. 2000, ch. 787, pp. 5246-5260.) As relevant to the current case, Senate Bill No. 1404 made changes to section 5405 and 5408 which we address below.

**B. The Governing Statutes**

**Section 5405**

Section 5405 establishes a general prohibition against advertising displays,[4] subject to specified exceptions, under prescribed statutory and regulatory controls, within a 660-foot wide controlled area at the edge of interstate or primary highways in this state.[5] Its introductory sentence provides: "*Notwithstanding any other provision of [the Act]*, no advertising display shall be placed or maintained within 660 feet from the edge of the right-of-way of, and the copy of which is visible from, any interstate or primary highway, other than any of the following . . . ." (§ 5405, italics added.) Subdivisions (a) through (e) of section 5405 specify the types of advertising displays allowed within the controlled area adjacent to interstate or primary highways. Subdivision (a), for example, concerns directional or other official signs for natural wonders and scenic and historical

---

[4]      "'Advertising display' refers to advertising structures and to signs." (§ 5202.)

[5]      Section 5220 reads: "'Primary highway' means any highway, other than an interstate highway, designated as a part of the federal-aid primary system in existence on June 1, 1991, and any highway that is not in that system *but which is in the National Highway System*." (Italics added.) It is a stipulated, undisputed fact in the current case that Highway 58 is part of the National Highway System, and, thus, it is a stipulated, undisputed fact that Highway 58 is a primary highway within the meaning of section 5220.

6

attractions, and subdivision (b) concerns advertising displays advertising the sale or lease of the property upon which the displays are located.

A form of statute establishing such a 660-foot wide controlled area for advertising displays at the edge of interstate and primary highways in this state has been on the books for almost 50 years. (See former § 5288, sub. (b), added by Stats. 1964-1965, 1st Ex. Sess. 1964, ch. 128, § 2, p. 394.) In enacting laws of this nature, the Legislature at one time declared that the regulation of advertising structures adjacent to any state highways was "necessary to promote the public safety, health, welfare, convenience and enjoyment of public travel, to protect the public investment in such highways, to preserve the scenic beauty of lands bordering such highways, and to insure that information in the specific interest of the traveling public is presented safely and effectively, recognizing that a reasonable freedom to advertise is necessary to attain such objectives." (*Id.*, subd. (a).)

As noted above, subdivisions (a) through (e) of section 5405 identify types of advertising displays allowed within the 660-foot wide controlled area at the edge of primary highways. The same subdivisions also prescribe requirements for each such type of advertising display. One such type of allowed advertising display is found in section 5405, subdivision (d)(1) as enacted in 1989 by Senate Bill No. 510. Section 5405, subdivision (d)(1), allows "message center displays that comply with all requirements of [the Act]." Further, section 5405, subdivision (d)(1) provides: "*No message center display may be placed within 1,000 feet of another message center display on the same side of the highway.*" (Italics added.)

Prior to 1989, a message center display allowed by section 5405 was restricted to displaying advertising only for an on-premise business. (See former § 5405, subd. (4); Stats. 1975, ch. 1074, § 1.2, pp. 2630-2631.)[6] With the 1989 enactment of Senate Bill

---

[6] Also prior to 1989, former section 5405, subdivision (4), included the following definition: "As used in this paragraph, message center displays are displays which may be changed electronic processes or by remote control." By the 1989 legislation, that definition was largely carried forward in former section 5405, subdivision (d)(1) as follows: "As used in this subdivision, message center displays are displays which have a changeable message which may be changed by electronic processes or by remote

7

No. 510, section 5405 was amended to remove the restriction on message centers to displaying advertising only for an on-premise business, in favor of a rule that generally allowed message center displays adjacent to interstate or primary highways. (See Stats. 1989, ch. 691, § 1, pp. 2262-2264.) At the same time, the Legislature imposed the spacing requirement noted above that no message center display could be placed within 1,000 feet of another message center on the same side of the highway. (*Ibid.*)

**Section 5407**

Section 5407 reads: "The provisions of Section[] . . . 5405 *shall not apply* to *penalty segments* that are *located . . . in business areas* and which comply with Section 5408 . . . ." (Italics added.) Interestingly, the enactment of section 5407 (see Stats. 1970, ch. 991, § 2, p. 1774) pre-dates the 1989 legislative amendment of section 5405, subdivision (d)(1), which, as noted above, opened the door for allowable message centers with general, not merely on-premises, advertising, but imposed a 1,000-foot spacing requirement between message centers.[7]

---

control." (Stats. 1989, ch. 691, § 1, pp. 2262-2264.) That definition was removed from section 5405, subdivision (d)(1), by the 2000 legislation, and the definition stated in section 5216.4 was adopted. (See fn. 3, *ante*; Stats. 2000, ch. 787, §§ 5 & 10, pp. 5247, 5250.)

[7] Section 5205 defines the term "business area" to mean "an area within 1,000 feet, measured in each direction, from the nearest edge of a commercial or industrial building or activity and which is zoned under authority of state law primarily to permit industrial or commercial activities or an unzoned commercial or industrial area." Because it is a stipulated, undisputed fact that Lamar's electronic message center display is located in an area zoned for industrial use, and within 1,000 feet of numerous business or commercial activities, it is necessarily an undisputed fact that Lamar's electronic message center display is located within a business area as defined by section 5205. "'Penalty segment' means any segment of . . . an interstate highway which is constructed upon right-of-way, any part of the width of which was acquired prior to July 1, 1956, *and any segment of a primary highway*." (§ 5218; italics added.) The concept of a penalty segment appears to mean any segment of a highway over which the Department has the authority to impose a penalty for a violation of the Act. It is a stipulated, undisputed fact in the current case that Highway 58 is part of the National Highway System, and, thus, a primary highway within the meaning of section 5220. Thus, it is also a penalty segment.

**Section 5408**

Section 5408 establishes standards for advertising displays in business areas. This section states: "*In addition to* the advertising displays permitted by Section 5405 to be placed within 660 feet of the edge of the right-of-way of . . . primary highways, advertising displays conforming to the following standards, *and not in violation of any other provision of [the Act]*, may be placed in those locations *if placed in business areas*: . . . ." (Italics added.) Section 5408, subdivisions (a) through (e), then set forth various standards for advertising displays in business areas, including spacing requirements that are less restrictive, distance-wise, than the 1,000-foot spacing requirement in section 5405, subdivision (d)(1), for message centers. The language of section 5408 uniformly refers to "advertising displays"; there is no language in section 5408 that more specifically refers to message centers.

The parts of section 5408 that are most relevant to Lamar's current case are subdivisions (b), (d) and (e). Subdivision (b) reads: "Advertising displays [in business areas] may not be placed that are so illuminated that they interfere with the effectiveness of, or obscure any official traffic sign, device, or signal; nor shall any advertising display include or be illuminated by flashing, intermittent, or moving lights (except that part necessary to give public service information such as time, date, temperature, weather or similar information); nor shall any advertising display cause beams or rays of light to be directed at the traveled ways if the light is of an intensity or brilliance as to cause glare or to impair the vision of any driver, or to interfere with any driver's operation of a motor vehicle."

Subdivision (d) provides: "*No advertising display shall be placed within 500 feet from another advertising display on the same side of any portion of . . . or a primary highway that is a freeway. . . . No advertising display shall be placed within 300 feet from another advertising display on the same side of any portion of a primary highway that is not a freeway if that portion of the primary highway is located outside the limits of an incorporated city and outside the limits of an urban area*. No advertising display shall be placed within 100 feet from another advertising display on the same side of any

9

portion of a primary highway that is not a freeway if that portion of the primary highway is located inside the limits of an incorporated city or inside the limits of an urban area. . . ." (Italics added.)

Subdivision (e) provides: "Subdivision (d) does not apply any of the following: . . . [¶] Advertising displays permitted by subdivisions (a) to (c), inclusive, of Section 5405. The minimum distance between signs shall be measured along the nearest edge of the pavement between points directly opposite the signs along each side of the highway."

## C. Analysis

As noted above, section 5405 establishes a 660-foot wide controlled area adjacent to interstate or primary highways in our state, and provides that no advertising display shall be placed in this controlled area unless it complies with the requirements specified in section 5405, subdivisions (a) through (e). Section 5405 is the starting point for all matters arising under the Act. "*Notwithstanding any other provision of [the Act],*" no advertising is allowed in the controlled area other than those specified in section 5405.

Section 5405, subdivision (d)(1) allows message center displays in the controlled adjacent to interstate and primary highways. At the same time, section 5405, subdivision (d)(1) subjects such displays to the following spacing requirement: "*No message center display may be placed within 1,000 feet of another message center display on the same side of the highway. . . .*"

The stipulated, undisputed facts in the administrative record establish that Lamar is applying for a permit for a message center display, that its message center display is located within the 660-foot wide controlled area at the edge of an interstate or primary highway, and that Lamar's message center display is located less than 1,000 feet from an already-existing message center display on the same side of the highway. Up to this junction of the law and facts, we do not see any error in the trial court's judgment. The language of section 5405, subdivision (d)(1) is plain and unambiguous as to message center displays next to public highways. Unless its language may be avoided, it controls. (*Voices of the Wetlands v. State Water Resources Control Bd.* (2011) 52 Cal.4th 499, 519

10

[discussing rules of statutory construction].) There shall not be a message center display within 1,000 feet of another message center display adjacent to a public highway.

To avoid this conclusion, Lamar argues that its message center display is governed by section 5408 because the display is *located in a business area* and it does not violate a 500-foot (or less) spacing requirement prescribed under section 5408, subdivision (d). Lamar points to subdivision 5408, subdivision (e), which provides a rule for the non applicability of section 5408, subdivision (d), to advertising displays allowed by section 5405. Lamar argues that, if section 5408, subdivision (d) does apply to its message center allowed by section 5405, subdivision (d)(1), then too the spacing requirements of section 5408, subdivision (d) control over the spacing requirements of section 5405, subdivision (d)(1). The trial court did not adopt this interpretation of the statutory scheme, nor do we.

Lamar correctly asserts that its message center display is located along a "penalty segment" of Highway 58 as defined by section 5218, and in a "business area" as defined by section 5205. Building upon this foundation, Lamar next invokes section 5407, which provides that "[t]he provisions of Section . . . 5405 shall not apply to penalty segments [of public highways] which are located . . . in business areas and which comply with Section 5408 . . . ." Lamar argues that, given the language of section 5407, and given the fact that Lamar's message center display is located along a penalty segment of a public highway in a business area, a location to which section 5405 shall not apply, it follows that section 5408's standards for advertising displays in a "business area" are the controlling standards.

Lamar offers a plausible interpretation of the statutory scheme. However, we see problems with adopting its interpretation because, in our readings, there is a significant amount of other statutory language in the scheme which would support other plausible interpretations. Different sections in the overall statutory scheme seem to want to control over other sections. Specifically, section 5405 applies "notwithstanding any other provision of the Act." On the other hand, section 5407 states that section 5405 "shall not apply" to advertising displays located in business areas and which comply with section

11

5408. Finally, section 5408 sets forth standards for advertising displays in business areas and indicates that it is applicable "in addition to" the advertising displays permitted by section 5405.

Given the vagaries created by the individual sections of the Act, we must turn to principles of statutory interpretation to determine which spacing requirement controls in Lamar's current case. The rules in this regard are well settled. "Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. *We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.* If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy. [Citations.]" (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737, italics added.) The interpretation of a statute is a question of law which we review de novo. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.)

We have undertaken this review, and conclude the legislative history supports the trial court's findings and conclusion that the Legislature intended to establish a 1,000-foot spacing requirement between message center displays adjacent to public highways when it enacted section 5405, subdivision (d)(1). When the Legislature enacted Senate Bill No. 510 in 1989, it specifically prescribed a 1,000-foot spacing requirement for message center displays in section 5405, subdivision (d)(1). (Stats. 1989, ch. 691, § 1, pp. 2262-2264.)

Lamar's arguments on appeal recognize the clarity of the conclusion that the Legislature intended to impose what Lamar labels as a "universal" 1,000-foot spacing requirement for message center displays by the 1989 legislation. But Lamar contends that more recent legislation, namely, Senate Bill No. 1404 (see Stats. 2000, ch. 787,

12

pp. 5246-5260), amended the Act in a manner that changed the universal 1,000-foot requirement for message center displays, at least as it affects Lamar's message center display in a business area. Lamar argues that Senate Bill No. 1404 "abolished" the then-existing universal 1,000-foot spacing requirement prescribed for message center displays in section 5405, subdivision (d)(1), and "replaced it in business areas with the more lenient spacing requirements of [section 5408, subdivision (d)]." We are not persuaded.

From the early 1980's up to the 2000 enactment of Senate Bill No. 1404, section 5408 remained unchanged. When section 5408 was amended in 2000, the amendments to the statutory language consisted of changing some uses of the word "which" to "that," and reformatting former subdivision (d) into new subdivisions (d) through (f). The Legislative Counsel bill analyses of Senate Bill No. 1404 comments that the 2000 bill made "various technical, *nonsubstantive* changes to existing law." (Italics added.) Lamar concedes there are no materials, e.g., no public or legislative comments or reports in the legislative history which show that the 2000 bill contemplated cutting in half the then-existing 1,000-foot spacing requirement for message center displays.

In addition to what is missing from the legislative history, the trial court took judicial notice of materials from the legislative history such as the Legislative Counsel's Digest.[8] This history supports the trial court's factual finding that, at the time the 1989 legislation was being vetted, legislators were advised that the bill would provide that "all message centers, as defined, meet certain requirements," and that the bill "*would delete message centers from certain exemptions* allowing advertising displays meeting certain requirements to be placed within 660 feet of an interstate or a primary highway *if in a business area.*" (Italics added.) Such reports do not support a conclusion that legislators believed they were loosening requirements for message centers.

---

[8] These included: Senate Rules Committee Analysis; The Legislative Counsel Digest published June 12, June 20, August 18, August 24, August 31, and September 27, 2000.

13

Apart from the legislative history, the Department's implementing regulations support the interpretation that a 1,000-foot spacing requirement is intended to apply to all electronic message center displays. Title 4 of the California Code of Regulations, section 2423(b) provides: "To qualify for a permit, an off-premise message center Display must meet all the requirements of the Act and these regulations for advertising off-premise activities *as well as specific requirements in Section 5405 of the Act related to message center Displays*." (Italics added.) This would include the 1,000-foot spacing requirement for message center displays specifically stated in section 5405, subdivision (d)(1). The regulation has been in effect since 1999, prior to the enactment of Senate Bill No. 1404, and remains unchanged today. A responsible agency's interpretation of a governing statute increases is to be given significant deference, and is more deserving when the agency has consistently followed its interpretation over time. (*Smith v. Fair Employment & Housing Com.* (1996) 12 Cal.4th 1143, 1157.)

Given the legislative history, we do not accept Lamar's perspective that the plain language of Senate Bill No. 1404, on its face, "abolished" the 1,000-foot spacing requirement for message center displays established in 1989, as set out in section 5405, subdivision (d)(1). We do not read any of the amendments to section 5408 wrought by Senate Bill No. 1404 — which are silent with specific regard as to message center displays — to have had any effect on the spacing requirements for message center displays as prescribed in section 5405, subdivision (d)(1).

Lamar focuses on new subdivision (e) of section 5408. Lamar accurately tells us that, prior to 2000, section 5408, subdivision (d), set forth standards for advertising displays in business areas, but also expressly stated: "This subdivision does not apply to advertising displays permitted by section 5405." As we read it, under the former law stated in section 5408, subdivision (d), the standards set forth in that subdivision which governed advertising displays in business areas did not apply to message center displays permitted by section 5405, subdivision (d)(1). Thus, at one time, when looking at a proverbial message center display allowed by section 5405, subdivision (d)(1), one would simply ignore section 5408, subdivision (d). Then, in the 2000 amendment to section

14

5408, the Legislature deleted the sentence in subdivision (d) quoted above — "This subdivision does not apply to advertising displays permitted by Section 5405." — and replaced it with new subdivision (e), which states: "[Subdivision (d) governing advertising displays in business areas] does not apply to any of the following: . . . [¶] . . . Advertising displays permitted by subdivisions *(a) to (c)*, inclusive, of Section 5405. . . ." (Italics added.) According to Lamar, this change on its face shows the Legislature's intent to adopt a new view as to the interplay between sections 5405 and 5408. According to Lamar, before the 2000 amendments to section 5408, the rules governing advertising displays in business areas did not apply to any and all advertising displays allowed by section 5405 (including message center displays allowed by section 5405, subdivision (d)(1)). But now, says Lamar, the new statutory scheme should be construed as follows: Under section 5408, new subdivision (e)(3), the rules governing advertising displays in business areas do not apply to advertising displays permitted by section 5405, subdivisions (a) through (c). By negative implication, argues Lamar, this means that the rules for advertising displays in business areas in section 5408, subdivision (d) *do* apply to a message center display that is allowed by section 5405, subdivision (d)(1). Thus, under section 5408, subdivision (e)(3), the spacing requirements for message center displays that are permitted by section 5405, *subdivision (d)(1)* do not control because the "does not apply" language of section 5408, subdivision (e)(3) only refers to advertising displays allowed by *subdivisions (a) to (c)*, inclusive, of section 5405. If only the statutes were as straightforward as Lamar's interpretation.

Both before and after 2000, the initial sentence of section 5408 provided that its prescribed standards applicable to advertising displays in business areas were subject to the condition that such advertising displays are "*not in violation of any other provision of [the Act]*." A message center display located less than 1,000 feet from another message center display does violate another provision of the Act, namely section 5405, subdivision (d)(1), which expressly imposes a 1,000-foot spacing requirement. The spacing requirements in section 5405, subdivision (d)(1) attach to one specifically identified type of advertising display, namely, message center displays, and trumps the

15

more general statutory provisions for advertising displays in business areas under section 5408, subdivision (d), both as a general rule of statutory interpretation (*Lake v. Reed* (1997) 16 Cal.4th 448, 464 [discussing rules of statutory construction]), and under the language of section 5408 itself. Further, we presume the Legislature to be aware of existing statues, and presume it amends a statute in light of the preexisting law. (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 212.) If the Legislature had intended to abolish the 1,000-foot spacing requirement standard for message center displays, then it could and would have said so by appropriate legislation, and there would be some indication of the same in the legislative history. We find this particularly true where a dramatic change is made to a statute concerning highway safety. Also, Lamar's offered interpretation of the statutory scheme seems to set up an internal conflict between the spacing requirements for advertising displays in business areas as prescribed by section 5408, subdivision (d) and the spacing requirements for message center displays as prescribed by section 5405, subdivision (d)(1), and we presume the Legislature would not have done so.

Because we have found that Lamar's electronic message center display violates the 1,000-foot spacing requirement prescribed in section 5405, subdivision (d)(1), we need not and do not address the issue whether Lamar's electronic message center display, or any electronic message center display, can ever fall within the governing reach of section 5408 in that the lighting utilized in an electronic message center display is, as the trial court stated, "by definition, 'intermittent'" within the meaning of section 5408, subdivision (b).

III. **The Constitutional Issue**

In a passing assertion in its opening brief on appeal, Lamar contends: "If sections 5405 and 5408 mean what the trial court says, they are . . . unconstitutional" because they infringe Lamar's right of commercial speech by an unnecessarily restrictive measure. We do not address Lamar's constitutional argument. As part of its efforts to perfect its appeal from the judgment on its petition for writ of administrative mandate, Lamar voluntarily dismissed its causes of action alleging a constitutional claim in the trial court.

16

Accordingly, any argument that the Act, as applied to Lamar, violated the company's free speech rights is not properly before us.

## DISPOSITION

The judgment denying Lamar's petition for writ of administrative mandate is affirmed.  Each party to bear its own costs on appeal.

**CERTIFIED FOR PUBLICATION**


BIGELOW, P. J.

We concur:


RUBIN, J.


FLIER, J.

17