Filed 9/12/14  Certified for Publication 9/30/14 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MOOREFIELD CONSTRUCTION, INC.,<br><br>    Plaintiff, Cross-Defendant, and<br>    Respondent,<br><br>    v.<br><br>INTERVEST-MORTGAGE INVESTMENT<br>COMPANY et al.,<br><br>    Defendants, Cross-Complainants, and<br>    Appellants. | D065464<br><br><br><br>(Super. Ct. No. RIC539252) |

APPEAL from a judgment of the Superior Court of Riverside County, Ronald L.

Taylor, Judge.  Reversed with instructions.

Early Sullivan Wright Gizer & McRae, Eric P. Early and Bryan M. Sullivan for

Defendants, Cross-Complainants and Appellants.

Mahoney & Soll, Paul M. Mahoney and Richard A. Soll for Plaintiff, Cross-

Defendant and Respondent.

Defendants and cross-complainants Intervest-Mortgage Investment Company and

Sterling Savings Bank (together Intervest) appeal a judgment in favor of plaintiff and

cross-defendant Moorefield Construction, Inc. (Moorefield). The parties' dispute arises from an uncompleted medical office building development in San Jacinto, California. Moorefield was the general contractor for the development, and Intervest was the construction lender. The developer, DBN Parkside, LLC (DBN), encountered financial difficulties toward the end of the project. As a result, DBN did not fully pay Moorefield for its construction services and defaulted on its construction loan from Intervest. Moorefield filed a mechanic's lien against the development property, and Intervest took title to the property in a trustee's sale under the construction loan.

Moorefield's complaint against Intervest sought foreclosure of its mechanic's lien on the property. Intervest's cross-complaint against Moorefield sought a declaration of the relative priority of the lien, equitable subrogation to a priority position over the lien, quiet title, and judicial foreclosure. Following a bench trial, the court entered judgment in favor of Moorefield on the complaint and cross-complaint, declared Moorefield's mechanic's lien was superior in priority to Intervest's construction loan deed of trust, and ordered foreclosure and sale of the property to satisfy Moorefield's mechanic's lien.

Intervest appeals, contending (1) the court erred in finding Moorefield's agreement to subordinate its mechanic's lien to the construction loan deed of trust was unenforceable; (2) the court should have applied the doctrine of equitable subrogation to give Intervest partial priority over Moorefield's mechanic's lien; (3) substantial evidence does not support the court's finding that Moorefield commenced work prior to the recording of Intervest's deed of trust; and (4) substantial evidence does not support the court's finding that Moorefield's mechanic's lien was timely filed following completion of

2

construction. We conclude Moorefield's agreement to subordinate its mechanic's lien to the construction loan deed of trust is enforceable and therefore reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2006, DBN purchased the San Jacinto property with a $4.7 million loan from BankFirst. DBN planned to construct on the property a medical office complex, known as Parkside Medical Center (Parkside), consisting of two buildings, a parking lot, and related infrastructure. DBN and its principal, Steve Delson, had worked with Moorefield on prior construction projects, including a retail center in San Jacinto. Moorefield understood it had a good chance of working on the Parkside development as well. At Delson's request, Moorefield erected a temporary chain link fence on the property.

The next year, in anticipation of construction beginning in earnest, a DBN construction manager asked Moorefield to "clear and grub" the Parkside project site, then vacant land with heavy vegetation. Clearing and grubbing consists of methodically "scarifying" or tilling the soil on a construction site to remove vegetation, roots, and other undesirable material. Holes and indentations in the land are smoothed out. Later that month, DBN and Moorefield entered into a construction contract for the Parkside project on the property. Two weeks later, Moorefield cleared and grubbed the Parkside site again.

DBN sought funding for the Parkside project from Intervest. Intervest agreed to provide a construction loan secured by a deed of trust on the property associated with the project. The construction loan agreement was concluded, and the deed of trust recorded, approximately a month after Moorefield's construction contract was signed. As part of

3

the loan, Intervest paid off DBN's earlier debt to BankFirst. Intervest intended its deed of trust to be first in priority on the property and would not have made the construction loan to DBN otherwise.

In connection with the construction loan agreement, Intervest required DBN to assign its rights and remedies under the construction contract (but not its obligations) to Intervest. Moorefield was required to consent to the assignment. Both DBN and Moorefield did so. Moorefield's consent provides:

> "[Moorefield] hereby consents to the above Assignment and each and every term thereof, and as an inducement to Lender to make, and in consideration of Lender making the loan (the 'Loan') to Borrower under the Loan Agreement described above, agrees as follows:
>
> "1. In the event of default by [DBN] under any instrument, document or agreement relating to the Loan, [Moorefield], at Lender's request, will continue performance on behalf of Lender under the Contract in accordance with the terms thereof, provided that [Moorefield] shall be reimbursed in accordance with the Contract for all work, labor and materials rendered pursuant to the Contract. [¶] . . . [¶]
>
> "6. [Moorefield] acknowledges that there presently exist no unpaid claims due to [it], its agents or assignees, arising out of its performance under any agreement heretofore executed . . . and that [Moorefield] has no present claim against or lien upon the property or the improvements now existing or to be constructed thereon arising out of its performance under the Contract. [Moorefield] hereby further agrees and acknowledges that any and all payments made or payable to it pursuant to the Contract shall remain subordinate to the Loan at all times during the term of the foregoing assignment, and that any and all liens for labor done and materials and services furnished pursuant to the Contract or otherwise shall be subordinate to the lien of the Deed of Trust."

4

A Moorefield executive testified at trial that he was familiar with similar consent agreements and had signed them in connection with past construction projects. He had "no issues" with the consent at the time it was executed.

Before Intervest's deed of trust was recorded, Intervest's title insurance company sent an inspector to the Parkside project site to determine whether any construction had begun. The inspector took photographs of the site from multiple perspectives. The inspector noted Moorefield's temporary fence but did not identify any other evidence of construction. He described the property as vacant land with no signs of construction. At trial, however, Moorefield personnel testified that the inspector's photographs showed dirt patterns, called "windrows," indicative of a clearing and grubbing operation. Intervest's deed of trust was recorded the same day as the title insurance company inspection.

The next month, in anticipation of a groundbreaking ceremony for the Parkside project, Moorefield cleared and grubbed the site a third time. Later, the site was cleared and grubbed an additional time by Moorefield's grading subcontractor.

During construction of the project, Moorefield submitted pay applications to DBN to request payment. The pay applications included an itemization of the work performed, the percent of work completed in various categories, and a certification from Moorefield. DBN provided the pay applications to Intervest, which approved and funded the payments pursuant to DBN's construction loan agreement. Moorefield did not communicate directly with Intervest. Each pay application included a conditional waiver and release from Moorefield, on a statutory form, regarding its mechanic's lien rights up

5

to the date of that application. (See former Civ. Code, § 3262, subd. (d)(1).)[1] After Intervest funded a payment, Moorefield submitted an unconditional waiver and release, also on a statutory form. (See § 3262, subd. (d)(2).)

The first 16 pay applications were submitted and funded. Moorefield received approximately $7.2 million for these pay applications. Moorefield submitted two additional pay applications, totaling approximately $2.2 million, for its work on the project. Around the time of the last two pay applications, however, DBN defaulted on its construction loan agreement with Intervest. Moorefield did not receive payment for its final two pay applications.

DBN recorded a statutory notice of completion, although Moorefield was not aware of its filing at the time. Moorefield continued to work on the project. This work included landscaping, painting, concrete patching, traffic signal installation, street improvement, and miscellaneous punch list work. Some punch list work was identified by the City of San Jacinto. Delson, DBN's principal, testified at trial that some of Moorefield's work, particularly off-site work, was not complete at the time DBN filed its notice of completion.

Three weeks after completing the punch list work, Moorefield filed a mechanic's lien against the Parkside property for $2.2 million, consisting of the two unpaid pay

---

1    Further statutory references are to the Civil Code, unless otherwise specified. Effective July 1, 2012, California's mechanic's lien statutes were repealed, reorganized, and recodified with technical and substantive changes. (Stats. 2010, ch. 697.) The recodified statutes appear at sections 8000 through 9566 of the Civil Code, but because the former statutes govern this dispute, the statutory references are to the Civil Code sections in effect at the relevant time.

applications.  Soon afterwards, Moorefield filed the instant lawsuit.  Moorefield initially sued DBN and a number of fictitiously named defendants for breach of contract, foreclosure of its mechanic's lien, and other claims.  Intervest-Mortgage Investment Company and Sterling Savings Bank were added as defendants, although Moorefield pursued only foreclosure of its mechanic's lien against them.

Intervest denied Moorefield's claims and filed a cross-complaint seeking a declaration that its deed of trust was superior to Moorefield's mechanic's lien, and for equitable subrogation, quiet title, and judicial foreclosure.  While the litigation was pending, Intervest-Mortgage Investment Company assigned its deed of trust to Sterling Savings Bank, its parent company.  Sterling Savings Bank then foreclosed on the construction loan deed of trust and took title to the property at the subsequent trustee's sale with a bid of $6 million.

At the outset of trial, Moorefield dismissed its claims against DBN without prejudice.  The trial, held without a jury, lasted six days.  Following trial, the court issued a written statement of decision.  The court found Moorefield's mechanic's lien was valid, timely recorded, and had priority over Intervest's deed of trust.  In the court's view, construction commenced on the Parkside project when Moorefield first cleared and grubbed the property, and the mechanic's lien had priority as of that date.  Construction was not completed until the end of Moorefield's punch list work.  Moorefield thus had 90 days from that date to record its mechanic's lien.  (See § 3115.)  Because DBN filed its notice of completion before construction was actually complete, the notice was ineffective.  The court further determined the subordination clause contained in paragraph

7

six of Moorefield's consent to DBN's assignment to Intervest was unenforceable and the doctrine of equitable subrogation did not apply.

Intervest objected to the court's statement of decision on various grounds; the court overruled those objections. The court entered judgment in favor of Moorefield on the complaint and cross-complaint, declared Moorefield's mechanic's lien had priority over Intervest's deed of trust, and ordered foreclosure and sale of the Parkside property to satisfy Moorefield's lien. Intervest appeals.

## DISCUSSION

## I

Intervest first argues the trial court erred in finding the subordination clause in Moorfield's consent to DBN's assignment of its rights under the construction contract unenforceable. The trial court's statement of decision addressed this issue as follows:

> "The Court concludes that such a subordination clause, according to applicable case law, amounts to a violation of public policy because it would deprive [Moorefield] of its mechanic's lien priority right that is a guarantee to them (as a contractor) under the California Constitution.
>
> "Moreover, [former] California Civil Code § 3262(d) provides that any waiver of rights given by way of a mechanic's lien claimant shall be null, void and unenforceable unless it substantially follows the language in Paragraphs (d)(1) through (4) of [former] § 3262. There was no evidence introduced during the trial that indicated the required language was included in the Subordination Clause or anywhere else in the contract. Therefore, the Court concludes that because the required statutory language was not included in the contract the Subordination Clause is invalid.
>
> "Finally, even if the Court were to conclude that the subordination clause was valid and not contrary to public policy, nevertheless, the defendants['] failure to make the final two payments to [Moorefield]

8

(pay applications 17 and 18) would amount to a material breach of the contract."

Intervest argues the constitutional basis of California's mechanic's lien statutes does not render the subordination clause unenforceable. Intervest suggests public policy, as reflected in those statutes, allows a general contractor like Moorefield to waive or subordinate its mechanic's lien rights. (See § 3268.) Intervest argues section 3262 protects only subcontractors and material suppliers, not general contractors. Intervest further contends the agreement the trial court found was breached did not impose an obligation on Intervest to make payments to Moorefield under the circumstances and thus cannot invalidate the subordination clause.

Moorefield responds that section 3262 protects general contractors as well. Under that section, Moorefield argues, a contractor's mechanic's lien rights may not be waived or impaired prior to performance and payment for the contractor's work. Moorefield further contends the subordination clause was contingent on Moorefield's receipt of payment for its work. Because Moorefield did not receive payment, it argues, the consent to DBN's assignment was breached and the subordination clause is unenforceable.

Interpretation of California's mechanic's lien statutes and of California's public policy regarding subordination and waiver of mechanic's lien rights presents questions of law we consider de novo. (See *Tesco Controls, Inc. v. Monterey Mechanical Co.* (2004) 124 Cal.App.4th 780, 789 (*Tesco Controls*); see also *Lamar Center Outdoor, LLC v. Department of Transportation* (2013) 221 Cal.App.4th 810, 821 ["The interpretation of a

9

statute is a question of law which we review de novo."].)  In the absence of conflicting extrinsic evidence, we review the trial court's interpretation of the relevant agreements, including the subordination clause, de novo as well.  (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.)  We review the trial court's factual findings for substantial evidence.  (*Tesco Controls*, at p. 789.)

II

A

"Our state Constitution provides: 'Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens.'  (Cal. Const., art. XIV, § 3.)  As [the Supreme Court] has said, 'The mechanic's lien is the only creditors' remedy stemming from constitutional command and our courts "have uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen." [Citation.]'  [Citation.]  '[S]tate policy strongly supports the preservation of laws which give the laborer and materialman security for their claims.' "  (*Wm. R. Clarke Corp. v. Safeco Ins. Co.* (1997) 15 Cal.4th 882, 888-889.)  However, " '[a]lthough mechanic's lien laws should be liberally construed to protect those who have contributed skills, services or materials, towards the improvement of property, it has been recognized that lien laws are for the protection of owners as well as mechanic's lien claimants.' "  (*Walker v. Lytton Sav. & Loan Assn.* (1970) 2 Cal.3d 152, 158.)

10

California's mechanic's lien statutes place limits on the ability of certain persons to waive or otherwise impair mechanic's lien rights.  Section 3262, subdivision (a), provides in relevant part as follows: "Neither the owner nor original contractor by any term of a contract, or otherwise, shall waive, affect, or impair the claims and liens of other persons whether with or without notice except by their written consent, and any term of the contract to that effect shall be null and void.  Any written consent given by any claimant pursuant to this subdivision shall be null, void, and unenforceable unless and until the claimant executes and delivers a waiver and release."[2]  Subdivision (b)(1) of the statute further provides: "No oral or written statement purporting to waive, release, impair, or otherwise adversely affect a claim is enforceable or creates any estoppel or impairment of a claim unless either: [¶] (A) It is pursuant to a waiver and release prescribed in this section. [¶] (B) The claimant had actually received payment in full for the claim."  (§ 3262, subd. (b)(1).)  Moreover, unless a waiver or release substantially follows the statutory forms set forth in former section 3262, "[t]he waiver and release given by any claimant pursuant to this section shall be null, void, and unenforceable . . . ."  (§ 3262, subd. (d).)

The parties dispute how section 3262 applies to an original or general contractor like Moorefield.  By its terms, section 3262 prevents an owner or original contractor from waiving or impairing "the claims and liens of other persons" without their written

---

[2]    "One who contracts directly with the owner is an original contractor."  (*Scott, Blake & Wynne v. Summit Ridge Estates, Inc*. (1967) 251 Cal.App.2d 347, 357.)  Other terms for such contractors include general, direct, and prime contractors.

11

consent. (§ 3262, subd. (a).) Courts have recognized section 3262 reflects the Legislature's concern that owners and original contractors may use their superior bargaining power to extract lien waivers from subcontractors and material suppliers. (See *Bentz Plumbing & Heating v. Favaloro* (1982) 128 Cal.App.3d 145, 148-150 (*Bentz Plumbing*).) Historically, therefore, original contractors have been burdened, rather than benefited, by the statute.

In *Bentz Plumbing*, the court considered an earlier version of section 3262 that did not allow for written consent. The statute at issue in *Bentz Plumbing* provided in relevant part: " '[N]either the owner . . . nor the original contractor shall by any term of their contract, or otherwise, waive, affect, or impair the claims or liens of other persons whether with or without notice, . . . and any term of the contract to that effect shall be null and void . . . .' " (*Bentz Plumbing, supra*, 128 Cal.App.3d at p. 148.) *Bentz Plumbing* interpreted the statute to prohibit an owner or original contractor from requiring a subcontractor to consent to a mechanic's lien waiver. "To require a subcontractor to consent to a lien waiver to secure payments due a prime contractor at the least 'affect[s]' and probably 'impair[s]' the lien by the threat of resulting nonpayment to the subcontractor. As such, it was 'null and void' under [former] Civil Code section 3262 and the lien waivers secured thereby are similarly invalid." (*Id.* at p. 150.)

The court in *Santa Clara Land Title Co. v. Nowack & Associates, Inc.* (1991) 226 Cal.App.3d 1558 (*Santa Clara Land*) considered the same statute in the context of an original contractor, rather than a subcontractor. (*Id.* at p. 1561.) The original contractor performed civil engineering work on a multi-unit residential property. (*Ibid.*) After

12

encountering difficulties securing payment, the contractor recorded successive mechanic's liens against the property. The first lien was paid out of escrow when the property changed ownership. (*Id.* at p. 1562.) After the second lien was recorded, the contractor executed a "Release of Lien" stating the second mechanic's lien was "hereby fully satisfied, released, and discharged," although the contractor had not yet received payment. (*Ibid.*) The contractor executed the release to entice a construction lender to advance funds from which the contractor hoped to be paid. The construction lender required the release to ensure that the security for its construction loan would be first in priority on the property. (*Ibid.*) After the contractor executed the release, the construction loan successfully funded. The contractor was subsequently paid. (*Ibid.*)

The contractor then recorded a third mechanic's lien for further engineering services. (*Santa Clara Land, supra*, 226 Cal.App.3d at p. 1563.) The owner also defaulted on its construction loan, and the lender took title to the property in a trustee's sale. (*Ibid.*) The lender sought to quiet title as against the contractor's mechanic's lien, and the contractor sought foreclosure. (*Ibid.*) The contractor argued its third mechanic's lien related back to the beginning of its work on the project and had priority over the lender's security interest. The lender countered that the contractor's release extinguished the prior lien rights. (*Ibid.*)

The *Santa Clara Land* court held that "[u]nder Civil Code section 3268, the parties may waive or release the benefits of the mechanic's lien laws, unless otherwise prohibited by statute or public policy." (*Santa Clara Land, supra*, 226 Cal.App.3d at p. 1566, fn. omitted; see also *Aetna Cas. and Sur. Co. v. United States* (Ct.Cl. 1981) 655 F.2d 1047,

13

1057-1058 (*Aetna*).)  Section 3268 provides as follows: "Except where it is otherwise declared, the provisions of the foregoing titles of this part, in respect to the rights and obligations of parties to contracts, are subordinate to the intention of the parties, when ascertained in the manner prescribed by the chapter on the interpretation of contracts; and the benefit thereof may be waived by any party entitled thereto, unless such waiver would be against public policy."  Under this provision, any contractor may therefore waive or impair its mechanic's lien rights unless such a waiver would otherwise be prohibited.

The *Santa Clara Land* court concluded section 3262 did not prohibit an original contractor from waiving or impairing its own mechanic's lien rights.  "By its terms this section limits the ability of the original contractor to waive or impair the claims and liens *of other persons*.  The clear implication is that the contractor may waive or release *his own claim*, when doing so does not affect or impair the claims or liens of other laborers or subcontractors."  (*Santa Clara Land, supra*, 226 Cal.App.3d at p. 1568; see also *Aetna, supra*, 655 F.2d at p. 1058 [general contractor is not prohibited from waiving its own lien rights under § 3262].)  Under *Santa Clara Land*, an original contractor like Moorefield may validly waive or impair its own mechanic's lien rights.

Moorefield argues *Santa Clara Land* is factually distinguishable.  Moorefield points out the contractor in that case executed its release after it had completed the portion of the work that gave rise to the released mechanic's lien.  (*Santa Clara Land, supra*, 226 Cal.App.3d at p. 1562.)  Moorefield contends *Santa Clara Land* did not approve prospective waivers such as the subordination clause at issue here.  Although Moorefield is correct that *Santa Clara Land* considered a retrospective release, the court's

14

reasoning is not so limited. Under *Santa Clara Land*, section 3262 simply does not apply to waivers and releases by original contractors. Pursuant to section 3268, an original contractor is empowered to waive or release its mechanic's lien as it so chooses-- including prospectively. (See *Santa Clara Land,* at pp. 1566, 1568; see also *Aetna, supra*, 655 F.2d at pp. 1057-1058.)

Moorefield also points out the contractor in *Santa Clara Land* was paid for the work that gave rise to the mechanic's lien that was released. (*Santa Clara Land, supra*, 226 Cal.App.3d at p. 1562.) The payment, however, was made *after* the release was executed. (*Ibid.*) The contractor's release was not contingent on payment. Instead, the contractor executed the release to allow the owner to secure a construction loan that would provide funds for payment. (*Ibid.*) Nothing in *Santa Clara Land* suggests an original contractor's waiver or release is valid only if payment is subsequently received. (*Id.* at p. 1568; see also *Tesco Controls, supra*, 124 Cal.App.4th at p. 797 [statutory form "waive[s] mechanic's lien rights . . . for services rendered and materials provided up to the date stated on the receipt, even if those services and materials were *not* compensated by the progress payment"], italics added.) The factual distinctions urged by Moorefield are unpersuasive.[3]

---

3  Moorefield's reliance on this court's decision in *Koudmani v. Ogle Enterprises, Inc.* (1996) 47 Cal.App.4th 1650 is misplaced. *Koudmani* considered whether a subcontractor may validly release its inchoate mechanic's lien right by releasing a particular claim of lien. (*Id.* at p. 1653.) In that context, it distinguished *Santa Clara Land*. (*Koudmani,* at p. 1659.) Section 3262 was not at issue. " '[C]ases are not authority for propositions not considered.' " (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 198.)

B

Moorefield further argues *Santa Clara Land*'s interpretation of section 3262 was incorrect. Moorefield claims section 3262 should be read as creating two prohibitions: first, the owner may not waive or impair another person's mechanic's lien; and, second, an original or general contractor may not waive or impair another person's mechanic's lien.

In construing a statute, we look first to the language of the statute itself. (*People v. Statum* (2002) 28 Cal.4th 682, 689-690; *MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082.) The plain language of the statute does not contain the dual prohibitions Moorefield has identified. It contains a single prohibition: neither owners nor original contractors may waive or impair the liens of other persons without their written consent. (§ 3262, subd. (a).) The "other persons" referenced in the statute are persons *other than* owners and original contractors.[4]

_____

[4] Contrary to Moorefield's contention, the statute's use of the term "claimant" does not compel the conclusion that original contractors are protected by section 3262. The relevant portion of the statute reads as follows: "Any written consent given by any claimant pursuant to this subdivision shall be null, void, and unenforceable unless and until the claimant executes and delivers a waiver and release. That waiver and release shall be binding and effective to release the owner, construction lender, and surety on a payment bond from claims and liens only if the waiver and release follows substantially one of the forms set forth in this section . . . ." (§ 3262, subd. (a).) Even if "claimant" may generically refer to an original contractor as well, the claimants at issue here are circumscribed by the language of the statute. Only those claimants whose consent is governed by this statute are referenced by this provision. (See *ibid.* ["Any written consent given by any claimant *pursuant to this subdivision* . . . ."], italics added.) Original contractors may give consent other than "pursuant to this subdivision" and therefore are not part of the class of claimants covered here. (See *ibid.*; see also § 3268.)

16

Even were the language of the statute ambiguous, the history of the statute confirms this interpretation. (See *MacIsaac v. Waste Management Collection & Recycling, Inc., supra*, 134 Cal.App.4th at p. 1083 [interpretation may be aided by extrinsic aids].) Section 3262 descended from a similar provision first enacted in 1885.[5] (*Bentz Plumbing, supra*, 128 Cal.App.3d at p. 149, fn. 2.) The 1885 statute resolved "a conflict in authority whether an owner and prime contractor could by a provision of their contract waive the rights of subcontractors and materialmen." (*Ibid.*) "The statute settled the conflict by requiring a lien waiver by the written consent of the subcontractor." (*Ibid.*) The statute stood largely unchanged until 1972, when the Legislature amended the statute to remove the provision allowing written consent. (Stats. 1972, ch. 1319, § 1, p. 2627; see also *Bentz Plumbing,* at p. 149.) "[T]he object of the 1972 amendment was to protect subcontractors and materialmen from being forced to consent in writing to impairment of their lien rights in order to get the job or to get paid." (*Bentz Plumbing,* at p. 149, fn. 3.) The focus of the statute was the protection of subcontractors and material suppliers, not original contractors.

Although a proper interpretation of the 1972 amendment, the decision in *Bentz Plumbing* "dried up construction loans and plunged construction lending in California into chaos." (*Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233,

---

5    The 1885 statute provided as follows: " 'It shall not be competent for the owner and contractor, or either of them, by any term of their contract, or otherwise, to waive, affect, or impair the claims and liens of other persons, whether with or without notice, except by their written consent, and any term of the contract to that effect shall be null and void.' (Former Code Civ. Proc., § 1201, added by Stats. 1885, ch. 152, § 7, p. 146.)" (*Bentz Plumbing, supra*, 128 Cal.App.3d at p. 149, fn. 2.)

17

1248, fn. omitted.) "[L]enders typically require releases of existing lien rights before they will make progress payments on construction [loans]" (*ibid.*), and the *Bentz Plumbing* decision prohibited that practice. As a consequence, the Legislature amended section 3262 into substantially the form that governs this dispute. (See Stats. 1984, ch. 185, § 1; see also *Halbert's Lumber,* at p. 1248.)

The amendment restored the ability of "other persons" to waive their mechanic's lien rights in writing, established mandatory forms for those waivers, and confirmed those waivers are only valid if the forms were used or payment was in fact made. (§ 3262.) The amendment did not remove the distinction between owners and original contractors, on one hand, and "other persons," on the other. (§ 3262, subd. (a).) As the *Santa Clara Land* court noted, the amended statute retained its focus on the protection of subcontractors and material suppliers: "Effective January 1985, the current statute prohibits an owner or original contractor from waiving, affecting or impairing the claims or liens of others except by their written consent. In addition, the statute specifies in detail the form for such waivers by subcontractors or other claimants." (*Santa Clara Land, supra*, 226 Cal.App.3d at p. 1568, fn. 4; see also *Halbert's Lumber, Inc. v. Lucky Stores, Inc., supra*, 6 Cal.App.4th at pp. 1248-1249 [describing the legislative history of the amended statute].)

Judicial decisions since that amendment, including by our Supreme Court, support this interpretation. (See *Wm. R. Clarke Corp. v. Safeco Ins. Co., supra*, 15 Cal.4th at p. 889 ["By law, a subcontractor may not waive its mechanic's lien rights except under certain specified circumstances."]; *Tesco Controls, supra*, 124 Cal.App.4th at p. 790 ["By

18

law, any waiver of a subcontractor's mechanic's lien rights is null and void unless the lienholder expressly waives his rights pursuant to a form prescribed by [statute]."].) Secondary sources likewise recognize the limited scope of section 3262. (See Bruner & O'Connor, Construction Law (2014) § 8.151 [statute "restrict[s] a general contractor's ability to waive the lien rights of its subcontractors and suppliers"]; see also Cal. Mechanics Liens and Related Construction Remedies (4th ed. 2013) § 8.32, p. 712 ["Direct contractors, however, may waive or release their own claims as long as they do not affect or impair the claims or liens of others."].) Moorefield's interpretation of the statute is unsupported by its plain language and statutory history.

Moorefield argues this interpretation of section 3262 contradicts the purpose of California's statutory scheme governing mechanic's liens. However, the ability of an original contractor to waive or impair its own mechanic's lien rights is consistent with the proposition that those contractors have mechanic's lien rights and that they are generally protected by other provisions of the statutes. Moreover, the general rule that California's mechanic's lien statutes should be interpreted in favor of the lien claimant cannot override the plain language of sections 3262 and 3268. Regardless of an original contractor's ability to invoke other mechanic's lien statutes for its own protection, section 3262 represents an additional protection extended only to "other persons."

C

Here, Moorefield contracted directly with the Parkside owner, DBN, and was therefore an original contractor under section 3262. (See *Scott, Blake & Wynne v. Summit Ridge Estates, Inc., supra*, 251 Cal.App.2d at p. 357.) The subordination clause

19

signed by Moorefield provides that "any and all payments made or payable to [Moorefield] pursuant to the Contract shall remain subordinate to the Loan at all times during the term of the foregoing assignment, and that any and all liens for labor done and materials and services furnished pursuant to the Contract or otherwise shall be subordinate to the lien of the Deed of Trust." The subordination clause was necessary to fund the construction loan, and Moorefield benefited as a direct result of its subordination agreement. Without the subordination clause, Moorefield would not have been able to work on the Parkside development because DBN would not have obtained funding. The Moorefield executive responsible for the Parkside project testified that he had "no issues" with the consent agreement at the time.

Under sections 3268 and 3262, the subordination clause was a valid exercise of Moorefield's right to waive or impair its own mechanic's lien rights. (See *Santa Clara Land, supra*, 226 Cal.App.3d at p. 1566.) Duly-enacted statutes reflect the public policy of this state. (See *In re Mark B.* (2007) 149 Cal.App.4th 61, 79; *Farmers Ins. Exchange v. Hurley* (1999) 76 Cal.App.4th 797, 803.) The trial court erred in holding otherwise.

III

Even if valid, Moorefield contends the subordination clause cannot be enforced against it because the consent agreement containing the clause was breached. Moorefield asserts that full payment under its construction contract with DBN was a condition of its agreement to subordinate. Because Moorefield did not receive full payment, it argues, the subordination clause never became effective.

20

The issue here is not the factual question of whether Moorefield was paid, but the legal question of its effect on Moorefield's subordination agreement under the language of the relevant contracts. In the absence of conflicting extrinsic evidence, we review the trial court's interpretation of the relevant agreements de novo. (*Parsons v. Bristol Development Co., supra*, 62 Cal.2d at p. 865.)

The trial court did not cite any specific provision in finding a material breach had occurred. Moorefield points to two provisions in support of its argument: (1) that "[DBN] shall continue to be liable for all obligations of [DBN] thereunder, [DBN] hereby agreeing to perform all of its obligations under the [construction] Contract"; and (2) that "[Moorefield] shall be reimbursed in accordance with the Contract for all work, labor and materials rendered pursuant to the Contract." Moorefield does not cite any extrinsic evidence it contends would aid our interpretation of these provisions.

Contrary to Moorefield's assertion, the first provision does not appear in the consent agreement; it appears in DBN's assignment agreement. The provision serves to confirm DBN, not any other party, remains obligated under the construction contract with Moorefield. This provision is not a condition of Moorefield's consent agreement; indeed, it is not a part of the consent agreement at all. It represents a confirmation by DBN, to Intervest, that DBN will comply with the construction contract. It cannot invalidate the subordination clause, which represents Moorefield's commitment to Intervest, in the event of DBN's failure to perform its obligations under the construction contract.

As to the second provision, Moorefield's partial quotation obscures its meaning. The full provision reads as follows: "In the event of default by [DBN] under any

21

instrument, document or agreement relating to the Loan, [Moorefield], at Lender's request, will continue performance on behalf of Lender under the Contract in accordance with the terms thereof, provided that [Moorefield] shall be reimbursed in accordance with the Contract for all work, labor and materials rendered pursuant to the Contract." The reimbursement obligation arises only where DBN has defaulted *and* Intervest requests that Moorefield continue its performance under the construction contract. Moorefield does not allege Intervest ever made such a request. Indeed, the evidence showed Moorefield never had an agreement with Intervest for payment. Moorefield and Intervest had little, if any, direct communication during the project.

The consent agreement was signed by Moorefield "as an inducement to Lender to make, and in consideration of Lender making the loan (the 'Loan') to Borrower under the Loan Agreement . . . ." The consideration for Moorefield's consent agreement, including the subordination clause, was therefore Intervest's "making the [construction] loan . . . to [DBN] under the Loan Agreement . . . ." Moorefield does not dispute that Intervest made the loan to DBN. When that occurred, Moorefield's agreement to subordinate its mechanic's lien rights became enforceable. DBN's subsequent failure to pay Moorefield did not withdraw Moorefield's agreement to subordinate under the language of the agreement. Payment to Moorefield was not a condition of the subordination clause.

The consent agreement and subordination clause in this case are therefore distinguishable from the subordination agreements at issue in the cases cited by Moorefield in support of its argument. In those cases, a party to the subordination agreement was alleged to have breached a condition of the subordination itself,

22

commonly the requirement that the loan given first priority be used only for construction purposes. (See *Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1315 [" 'Since one condition to priority is the proper use of the construction loan funds, the priority of the construction loan lien does not vest until such time as the funds are applied to the construction purpose. [Citation.]' "]; *Protective Equity Trust #83, Ltd. v. Bybee* (1991) 2 Cal.App.4th 139, 150-151; *Gluskin v. Atlantic Savings & Loan Assn.* (1973) 32 Cal.App.3d 307, 313.) No similar condition existed under the agreements in this case.

The trial court therefore erred in interpreting the agreements to require payment to Moorefield as a condition of the subordination clause. The agreements, as properly construed, required at most only that Intervest make the construction loan to DBN under the terms of the construction loan agreement for the subordination clause to be enforceable. Since Intervest in fact made the construction loan, Moorefield may not avoid application of the subordination clause.

IV

Because we conclude the subordination clause is valid, Moorefield's mechanic's lien was subordinated to the Intervest deed of trust that provided security for Intervest's construction loan to DBN. When Intervest foreclosed on its deed of trust, Moorefield's mechanic's lien--as a subordinate interest--was extinguished. (See *Rheem Mfg. Co. v. United States* (1962) 57 Cal.2d 621, 625; see also *Hohn v. Riverside County Flood Control etc. Dist.* (1964) 228 Cal.App.2d 605, 610.) Because its mechanic's lien has been extinguished, Moorefield may not maintain its action for foreclosure against the Parkside property. Moreover, because Intervest's deed of trust exceeded its successful bid for the

23

property at the trustee's sale, there were no surplus funds for the trustee to distribute to subordinate lienholders like Moorefield. (See § 2924k, subd. (a); *Passanisi v. Merritt-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1503-1504.)

Our conclusions are based on the law and undisputed facts, including the terms of the applicable agreements. The trial court's judgment must therefore be reversed with instructions to enter judgment in favor of Intervest. (See *Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 357 ["An appellate court may reverse a judgment with directions to enter a different judgment if it appears from the record that no new evidence of significance would be presented in a new trial and there is only one proper judgment."]; *Mid-Century Ins. Co. v. Gardner* (1992) 9 Cal.App.4th 1205, 1220; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 874, p. 935.)

The remaining grounds for reversal urged by Intervest are moot considering our conclusion Moorefield's mechanic's lien has been extinguished. We therefore need not consider them.

## DISPOSITION

The judgment is reversed. The matter is remanded with instructions to enter judgment against Moorefield Construction, Inc., and in favor of Intervest-Mortgage Investment Company and Sterling Savings Bank in accordance with this opinion. Intervest-Mortgage Investment Company and Sterling Savings Bank are entitled to costs on appeal.

                                        McDONALD, J.

WE CONCUR:


BENKE, Acting P. J.


HALLER, J.

Filed 9/30/14

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MOOREFIELD CONSTRUCTION, INC., | D065464 |
| Plaintiff, Cross-Defendant, and Respondent, | |
| v. | (Super. Ct. No. RIC539252) |
| INTERVEST-MORTGAGE INVESTMENT COMPANY et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants, Cross-Complainants, and Appellants. | |

THE COURT:

The opinion filed September 12, 2014, is ordered certified for publication.

BENKE, Acting P. J.

Copies to:  All parties